George **RAGSDALE**, Plaintiff–Appellant,

v.

Donna E. **SHALALA**, Secretary, Department of Health and Human Services, Defendant–Appellee.

No. 94–1890.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 25, 1994.

Decided April 27, 1995.

Dorie Budlow (argued), Westmont, IL, for plaintiff-appellant.

Donna Morros Weinstein, George Jackiw (argued), Dept. of Health and Human Services, Region V, Office of the General Counsel, Daniel E. May, Office of U.S. Atty., Civ. Div., Appellate Section, Chicago, IL, for defendant-appellee.

Before GOODWIN,* RIPPLE, and MANION, Circuit Judges.

MANION, Circuit Judge.

George Ragsdale appeals from the final decision of the Secretary of Health and Human Services (Secretary), denying him Disability Insurance Benefits (DIB), as well as Supplemental Security Income (SSI) under the Supplemental Security Income Program of the Social Security Act. Ragsdale's sole challenge before the district court was that the ALJ failed to include all of Ragsdale's impairments in the hypothetical questions posed to a vocational expert for the purpose of determining whether there were jobs available in the regional economy which a person with Ragsdale's restrictions could perform. The district court, relying upon this circuit's decision in *Ehrhart v. Secretary of Health and Human Services,* 969 F.2d 534 (7th Cir.1992), held that even if the hypothetical question omitted certain information, the record demonstrated that prior to testifying the vocational expert had reviewed Ragsdale's medical reports, which permitted a conclusion that the vocational expert did in fact give consideration to any of Ragsdale's omitted impairments in responding to the ALJ. Ragsdale now urges this court to overrule *Ehrhart.* For the reasons that follow, we reject Ragsdale's invitation to overrule *Ehrhart* and therefore affirm the ALJ's decision to deny benefits.

**I.**

At the time of his administrative hearing, Ragsdale was a forty-five year old male who formerly made his living by installing commercial and residential garage doors. Ragsdale claimed that he had become totally disabled following an on-the-job accident which injured his left shoulder and prevented him from performing any heavy lifting. He further claimed that two years after his accident he was involved in a automobile accident which left him with severe back pain. Further physical complaints included mild to severe hearing loss, constant ringing in his right ear, known as "tinnitus," and drowsiness from the medications he takes for pain.

Ragsdale filed claims for DIB and SSI alleging that he was totally disabled since the time of his on-the-job accident. The Secretary denied Ragsdale's claims both initially and upon reconsideration. Following this, Ragsdale requested a hearing before an ALJ. Both Ragsdale and the Secretary agreed,

* Hon. Alfred T. Goodwin, of the Ninth Circuit, sitting by designation.

and the ALJ found, that Ragsdale had established his inability to perform his past work according to step four of the five-step analysis as set forth in 20 C.F.R. §§ 404.1520 and 416.920(a)-(f).

At that point it was up to the Secretary to demonstrate that Ragsdale could still perform other work in the national economy. *Allen v. Sullivan*, 977 F.2d 385, 387 (7th Cir.1992). In determining whether the Secretary had met that burden, the ALJ solicited the testimony of a vocational expert. At the hearing, the ALJ asked the vocational expert to assume that a claimant could perform only light work, was unable to lift his left arm above the shoulder level, and dexterity in both hands. Given those characteristics, the ALJ asked the vocational expert whether there existed any jobs in the regional economy that such a person could perform. The vocational expert responded that based upon that hypothetical the claimant could perform hand packaging work of light products because these jobs were performed at a conveyor belt and did not require the claimant to lift his arm above waist level. The vocational expert testified that there were 10,000 such jobs in the regional economy. The ALJ posed another question to the vocational expert, this time asking him how many such sedentary jobs there were that a person with Ragsdale's left shoulder problems could perform. The vocational expert estimated that there were 1,000 such jobs. At this point the ALJ permitted Ragsdale to cross-examine the vocational expert regarding his jobs assessment. At no time did Ragsdale mention his problems with his "tinnitus," partial hearing loss, and certain other medicinal side effects; he did, however, express concern that because of his shoulder problems he would not be able to keep up with a conveyor belt. Upon further questioning from the ALJ, the vocational expert concluded that there were 5,000 such jobs that would not require the claimant to work at a conveyor belt. Based upon the vocational expert's testimony, the ALJ determined that there existed a significant number of jobs in the regional economy that Ragsdale could still perform. As a result, the ALJ found that Ragsdale was not disabled and consequently denied his application for benefits. The Ap-

peals Council denied Ragsdale's request for review, making the ALJ's decision the Secretary's final decision.

Ragsdale next sought judicial review of the Secretary's decision in the district court. Ragsdale's chief complaint was that the ALJ did not include all of Ragsdale's impairments in the hypothetical questions posed to the vocational expert. This, Ragsdale argued, meant that the hypothetical question did not adequately describe Ragsdale's condition, which, in turn, meant that the vocational expert's response to it could not constitute substantial evidence for purposes of determining whether Ragsdale could perform other work. Ragsdale and the Secretary filed cross motions for summary judgment on this point. The district court denied Ragsdale's motion and granted summary judgment in favor of the Secretary. As the basis for its decision, the district court observed that under this circuit's decision in *Ehrhart v. Secretary*, 969 F.2d 534 (7th Cir.1992), and its progeny, an ALJ does not have to include every one of the claimant's impairments in his hypothetical questions. All that need be shown from the record is that before presenting his expert testimony, the vocational expert reviewed the claimant's medical evidence and was present during the claimant's administrative hearing testimony. Applying *Ehrhart* to Ragsdale's claim, the district court noted that "[a]ny omissions from the hypotheticals are of no import because the [vocational expert] was present throughout Ragsdale's hearing and stated that he had reviewed Ragsdale's records." Memorandum opinion at 10. The court rejected Ragsdale's argument that *Ehrhart* and its progeny were wrongly decided, noting that it was bound to follow the law of this circuit. Consequently, the district court concluded that the ALJ's hypothetical question was proper and thus the vocational expert's response to it constituted substantial evidence supporting the ALJ's denial of benefits. Ragsdale appeals from that decision.

## II.

Ragsdale urges us to overrule *Ehrhart* and hold instead that an ALJ's failure to include every aspect of the claimant's impair-

ments in the hypothetical questions posed to a vocational expert cannot be remedied simply by showing that the vocational expert reviewed the claimant's medical documents and reports prior to the hearing. In making this argument, Ragsdale faces the uphill task of overcoming existing precedent, since three unanimous panels of this court have subsequently relied upon *Ehrhart* in repelling challenges to the adequacy of hypothetical questions posed to a vocational expert. *See, e.g., Herron v. Shalala,* 19 F.3d 329, 337 (7th Cir.1994); *Jones v. Shalala,* 10 F.3d 522, 525 (7th Cir.1993); *Cass v. Shalala,* 8 F.3d 552, 555–56 (7th Cir.1993). This, however, does not automatically bar Ragsdale's challenge, because it appears that none of these previous decisions encountered a direct challenge to *Ehrhart. Cf. United States v. Hill,* 48 F.3d 228, 232 (7th Cir.1995) (observing that "as a practical matter an opinion that contains no discussion of a powerful ground later advanced against it is more vulnerable to being overruled that an opinion which demonstrates that the court considered the ground now urged as a basis for overruling."). We will therefore consider the arguments Ragsdale has presented to this court, and determine whether any provide a basis for overruling our holding in *Ehrhart. See Colby v. J.C. Penney Co., Inc.,* 811 F.2d 1119, 1123 (7th Cir.1987).

Ragsdale first complains that *Ehrhart* authorizes a vocational expert to review all of the claimant's medical reports and documents in preparation for his testimony before the ALJ. Ragsdale maintains that this practice is improper because it creates the possibility that a vocational expert will make credibility findings and weigh conflicting medical evidence. Because there is no way to be sure whether the vocational expert engaged in this process before responding to an incomplete hypothetical question, Ragsdale tells us that our continued endorsement of *Ehrhart* actually invites vocational experts to usurp the role of the ALJ in determining what jobs claimants are able to perform.

Ragsdale's contention assumes too much. While we acknowledge that *Ehrhart* allows a vocational expert to go beyond an ALJ's hypothetical question in rendering his vocational assessments, Ragsdale is simply wrong when he asserts that there is no way to know if the vocational expert has exceeded his proper role. There currently exist sufficient procedural measures to bring out the vocational expert's thought process. For example, the claimant could question the vocational expert on cross-examination, pose his own hypothetical questions, or request the ALJ to pose interrogatories to the vocational expert, in each case challenging the vocational expert to explain and expand upon the basis of his response to the ALJ's hypothetical question. *Cf. Williams v. Shalala,* 997 F.2d 1494, 1499–1500 (D.C.Cir.1993) (stating that a hypothetical question's failure to accurately reflect a claimant's condition may be cured by a record showing that claimant, on cross-examination, made the vocational expert aware of any of the claimant's omitted impairments). If any of these disclosed that the vocational expert had engaged in activities reserved exclusively to the ALJ, and if the ALJ had nonetheless relied upon this tainted testimony in denying benefits, then we would have a basis for reversing the ALJ's decision to rely upon the vocational expert's response. *See, e.g., Cook v. Heckler,* 739 F.2d 396, 399 (8th Cir.1984). But Ragsdale has presented us with no evidence of this vocational expert overreaching his purpose and expertise. In the case before us, Ragsdale questioned the vocational expert under cross-examination. Although he took the opportunity to express his disagreement with the vocational expert's determination that he would be able to work at a conveyor belt, Ragsdale did not ask the expert if and to what extent he had considered Ragsdale's tinnitus, hearing loss, or medicinal side effects in rendering his vocational assessments. Nor, for that matter, did he pursue his apparent belief that this vocational expert selectively recalled only those portions of the medical evidence and Ragsdale's testimony that fit with a predetermined view that Ragsdale was not disabled. Ragsdale's failure to protect his own interests below cannot constitute a sufficient ground for us to cast aside a prior opinion.[1]

---

1. Although Ragsdale waived his right to be repre-    sented by counsel in the administrative hearing

Ragsdale's next challenge is really just a variation of his first. He claims that *Ehrhart* assumes that a vocational expert's review of the claimant's entire administrative record includes a review of the claimant's medical reports contained within that record. Ragsdale then attacks this assumption because according to the Secretary's handbook describing the function of vocational experts, the purpose behind a vocational expert's review of the administrative record is not to become familiar with the claimant's *medical* evidence; rather the purpose is to become familiar with the claimant's *vocational* evidence. That being the case, Ragsdale contends that the holding in *Ehrhart* assumes that the vocational expert will be reviewing evidence that the Secretary's handbook specifically instructs him *not* to review.

█ It is not at all clear what this argument achieves for Ragsdale. The transcript of the hearing before the ALJ clearly demonstrates that the vocational expert *did* review Ragsdale's medical reports before presenting his testimony. Had he not reviewed them, Ragsdale would at least be able to claim that the vocational expert was not aware of some of his impairments. He could then claim that the vocational expert could not have possibly considered these impairments in assessing Ragsdale's ability to perform work in the national economy. But since it is undisputed that the vocational expert *did* review the medical reports contained within the administrative record, Ragsdale must be arguing that because the vocational expert did not go by the book, he knew too much. But even if a vocational expert's review of the medical evidence within the administrative record violated the Secretary's handbook, this "transgression" has no bearing whatsoever on evaluating whether the vocational expert's response to a hypothetical question constitutes substantial evidence supporting a denial of benefits. Surely Ragsdale is not urging that we adopt some sort of exclusionary rule as a means of deterring what he considers bad behavior on the part of vocational experts.

Nor would we be so inclined. So what we are left with here is a vocational expert whose preparation for the hearing included a review of the entire administrative record containing vocational and medical evidence. The ALJ, who was also familiar with the record, posed certain hypothetical question needed to ascertain the information based on what had accumulated in the record and at the hearing. Because of the vocational expert's review of the record, coupled with his presence during Ragsdale's testimony, *Ehrhart* allows the reviewing courts to draw the conclusion that the vocational expert considered Ragsdale's various impairments even though all of those impairments were not specifically included in the ALJ's hypothetical question.

█ Nor is our circuit unique in its conclusion that an incomplete hypothetical question may be cured by a showing that prior to testifying the vocational expert reviewed the claimant's record containing the omitted information. In *Williams v. Shalala,* 997 F.2d 1494 (D.C.Cir.1993), the ALJ's hypothetical failed to include some information regarding the claimant's condition. The claimant argued that since the hypothetical question did not accurately describe the claimant's impairments, the vocational expert's response to it could not constitute substantial evidence supporting a denial of benefits. One of the crucial matters omitted from the ALJ's hypothetical questions was information regarding the claimant's age. The D.C. Circuit acknowledged this omission, but nonetheless concluded that the vocational expert was aware of the claimant's age when responding to the ALJ "*inasmuch as he testified that he had reviewed the administrative record which included Williams' medical records.*" *Id.* at 1500 (emphasis added). The record contained repeated references to the claimant's age. *Id.* Thus, the D.C. Circuit recognized that an omission from a hypothetical question can be resolved by a record showing that prior to testifying the vocational expert

---

before the ALJ, the transcript reveals that Ragsdale did avail himself of the opportunity to cross-examine the vocational expert, expressing his disagreement with the vocational expert's opinion that Ragsdale was able to perform certain

conveyor belt jobs. As Ragsdale has not challenged the validity of his waiver of counsel, we proceed on the assumption that Ragsdale is not challenging the adequacy of his handling of the matter *pro se* before the ALJ.

reviewed the portion of the administrative record containing the omitted information. This solution is the same that we permitted in *Ehrhart* and affirm today.

Nevertheless, *Ehrhart* is certainly not an open invitation for the vocational expert to search the record and come up with his own independent decision on what a claimant is or is not able to do. In cases such as the one before us, when following our rule in *Ehrhart*, it would be most helpful if ALJs would make clear on the record any assumptions underlying the vocational expert's conclusions regarding the claimant's ability to work. Such assumptions would come into play where the record shows the vocational expert reviewed the claimant's medical evidence before testifying, and the vocational expert was also present during the claimant's own testimony. The inference would be that the vocational expert incorporated any impairments described in the reports and the claimant's testimony when formulating his response to the ALJ's hypothetical question. To make this clearer, after obtaining the vocational expert's response, it would be helpful if the ALJ would follow up by asking the expert to explain the basis for his response. The vocational expert's explanation would place on the record whether he took into consideration impairments which were not included in the ALJ's hypothetical question, but nevertheless were contained in either the claimant's medical record or in hearing testimony before the ALJ. Such a follow-up question would reduce the need for a reviewing court to assume that the vocational expert recalled everything he read and heard before responding to what is later alleged to be an incomplete hypothetical. This refinement would be useful for future cases. In the meantime, we decline Ragsdale's invitation to overrule *Ehrhart*. The Secretary's denial of benefits is

AFFIRMED.