64 F.3d 665
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Melvin DAMBACHER, Plaintiff-Appellant,
v.
Donna E. SHALALA, Secretary of the Department of Health and
Human Services of the United States of America,
Defendant-Appellee.
 No. 94-3347.
 United States Court of Appeals, Seventh Circuit.
 Argued March 29, 1995.
Decided Aug. 9, 1995.
 
 1
 Before BAUER, and MANION, Circuit Judges, and STIEHL, District Judge*.
 
 ORDER
 
 2
 Melvin Dambacher seeks review by this Court of an Order of the district court affirming a final decision of the Secretary of Health and Human Services denying Dambacher Disability Insurance Benefits under Title II of the Social Security Act. 42 U.S.C. Sec. 405(g). We affirm on all grounds.
 
 I. BACKGROUND
 
 3
 On December 20, 1991, Dambacher filed an application for Title II Social Security Disability Benefits seeking disability insurance benefits (DIB), due to injuries he suffered in an automobile accident in April 1991. He sustained head injuries and a fractured left sinus. In his application for DIB, he alleged that he had a right shoulder injury, skull fracture, and hypertension, residuals of the April 1991 automobile accident.
 
 
 4
 His initial application for DIB was denied on April 13, 1992, and his request for reconsideration was denied on June 5, 1992. A hearing was requested, and held before Administrative Law Judge Peter J. Caras, Jr. on March 16, 1993. Dambacher was represented by counsel at the hearing. On March 25, 1993, ALJ Caras determined that Dambacher was not disabled pursuant to 20 C.F.R. Sec. 404.1520(f), because he retained the residual functional capacity (RFC) to perform a limited range of activity at the level of medium work. ALJ Caras also found that based on his capacity for medium work, his age, education and work history, Dambacher was not disabled and there were a significant number of jobs available which he could perform.
 
 
 5
 Dambacher filed a request for hearing before the Appeals Council, which denied review on August 9, 1993. This rendered the decision of the ALJ final, which in turn, became the final decision of the Secretary. Review was sought before the district court pursuant to 42 U.S.C. Sec. 405(g). The district court, upheld the ruling of the ALJ denying Dambacher benefits, and entered summary judgment in favor of the Secretary and against Dambacher. The plaintiff filed an appeal in this Court seeking review of the district court decision. This Court has jurisdiction over this action pursuant to 42 U.S.C. Sec. 405(g) and 28 U.S.C. Sec. 1291.
 
 II. ANALYSIS
 
 6
 The Social Security Act provides that the Secretary's findings shall be sustained if supported by substantial evidence. 42 U.S.C. Sec. 405(g). Therefore, we will reverse the findings of the Secretary "only if they are not supported by substantial evidence or if the Secretary applied an erroneous legal standard." Scivally v. Sullivan, 966 F.2d 1070, 1075 (7th Cir. 1992) (citation omitted). Substantial evidence constitutes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoted in Scivally, 966 F.2d at 1075. On review, the appellate court cannot "decide the facts anew, reweigh the evidence, or substitute our own judgment for that of the Secretary." Clark v. Sullivan, 891 F.2d 175, 177 (7th Cir. 1989), quoted in Scivally, 966 F.2d at 1075. Nor will we "reconsider credibility determinations made by the ALJ." Anderson v. Sullivan, 925 F.2d 220, 222 (7th Cir. 1991).
 
 
 7
 In order to be entitled to disability under the Social Security Act, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than twelve months ...." 42 U.S.C. Sec. 1382C(a)(3)(A). A five part test is used to determine whether a claimant is disabled within the meaning of the Act:
 
 
 8
 The following steps are addressed in order. (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops [the] inquiry and leads to a determination that the claimant is not disabled. 20 C.F.R. Sec. 404.1520 (1983).
 
 
 9
 Garfield v. Schweiker, 732 F.2d 605, 607 n.2 (7th Cir. 1984), quoted in Steward v. Bowen, 858 F.2d 1295, 1297 (7th Cir. 1988).
 
 
 10
 Each step must be answered affirmatively to proceed to the next, and the claimant bears the burden of proof on each of the first four steps of this inquiry. Id. at 1297, n.2.
 
 
 11
 If, however, a claimant establishes that he or she is not gainfully employed, has severe impairments, and his or her impairments either meet or equal a listed impairment or prevent the claimant from doing his or her past relevant work, the Secretary then bears the burden of establishing that the claimant is capable of performing some other type of work that is available in the national economy. McNeil v. Califano, 614 F.2d 142, 145 (7th Cir. 1980).
 
 
 12
 Id.
 
 
 13
 In this case, the ALJ determined that although Dambacher had not engaged in substantial gainful employment since the 1991 accident, he had worked part-time.[1] The ALJ further determined that plaintiff was not disabled and that he could perform medium-type work. In addition, he determined that Dambacher's testimony as to his daily activities (including his part-time work in the sawmill helping with janitorial duties; the fact that he splits wood and carries 45-50 pounds of wood, primarily in his left arm; that he collects aluminum cans for money and exercise; that he drives and performs most household chores; and that his hypertension was under control with medication) did not support a claim of total disability. The ALJ further found that although Dambacher's testimony concerning his pain and other subjective complaints was largely credible, and supported by medical evidence, it did not support his claim of total disability and an inability to work.
 
 A. Medical Evidence
 
 14
 After plaintiff's accident, he was under the care of Dr. Michael McIlhaney, a neurologist, for treatment of his head injuries and concussion. In June 1991, Dr. McIlhaney referred plaintiff to Dr. D. Gordon Allen for treatment of his shoulder. On July 2, 1991, Dr. Allen manipulated plaintiff's frozen shoulder and performed surgery to repair the torn rotator cuff. In October of 1991, Dr. Allen assessed plaintiff's progress as slow and that he potentially may require future manipulation of the shoulder. By November of 1991, Dr. Allen recognized great improvement in plaintiff's range of motion, but stated that plaintiff would not be able to return to heavy lifting.
 
 
 15
 In February 1992, Dr. Allen stated: "His range of motion slowly continues to improve, however, it is by no means full, and he is appreciably weak. He says that his pain situation has improved over preoperatively [sic], and at present he only has shoulder discomfort with strenuous activity."
 
 
 16
 In March and April 1992, Dr. Allen detailed that plaintiff's limitations included no strenuous tasks, particularly overhead lifting.
 
 
 17
 Dr. Russell D. Dohner, a treating physician, stated in an October 31, 1992 letter that the surgery had improved plaintiff's shoulder function, but that it was not restored to normal. Dr. Dohner noted that Dambacher "was not completely disabled by the shoulder problem." Dr. Dohner further stated that plaintiff was "not able to bring himself to accepting a lesser work than he was used to doing." Finally Dr. Dohner stated: "he is really not completely physically disabled and will have to find another type of work that he can do-possible [sic] some help through the Rehabilitation Department would help."
 
 B. Disability under Listing 1.13
 
 18
 Dambacher asserts that the ALJ did not have sufficient "substantial evidence" to form a basis for his finding that the shoulder impairment did not qualify as a soft tissue injury at the upper extremity under Listing 1.13, and therefore qualify him for disability benefits. 20 C.F.R. Part 404, Subpart P, Appendix 1, Sec. 1.13 provides: "1.13 Soft tissue injuries of an upper or lower extremity requiring a series of staged surgical procedures within 12 months after onset for salvage and/or restoration of major function of the extremity, and such major function was not restored or expected to be restored within 12 months after onset." The ALJ found, and the district court agreed, that Dambacher did not fall within the requirements of Listing 1.13 because he was not required to undergo "staged surgical procedures within 12 months." The ALJ properly found that Listing 1.13 is concerned with the disabling effects of a series of surgical procedures required to remedy an injury. As we stated in Waite v. Bowen, 819 F.2d 1356, 1359 (7th Cir. 1987), Listing 1.13
 
 
 19
 is directed at the loss of the use of one extremity, not in itself disabling under the regulations, where restoration of function will require repeated staged surgical procedures over a lengthy period, thus making an individual who would otherwise be capable of substantial gainful employment unavailable for work because of these repeated surgical procedures.
 
 
 20
 The Waite decision clarified that Listing 1.13 does not grant benefits to someone who has lost the use of an extremity for twelve months or more, absent staged surgical proceedings. Id.
 
 
 21
 Here, as in Waite, Dambacher was not required to undergo a series of operations to restore use of his right arm. Rather, Dambacher had two procedures in one day, the manipulation of the frozen shoulder and repair of the torn rotator cuff. These procedures do not qualify as "staged" surgical procedures, and therefore Listing 1.13 does not apply.
 
 
 22
 Therefore, we find that the Secretary's decision that Dambacher failed to establish that his impairments met or equaled a listed impairment was supported by substantial evidence.
 
 
 23
 C. Findings of Ability to Perform Medium Work
 
 
 24
 Dambacher next asserts that the ALJ erred when he found that Dambacher had the RFC to perform medium level work. Medium level work is defined as:
 
 
 25
 3. Medium exertion combined with a nonexertional impairment.... Medium work is distinct from the less strenuous levels in the activities needed to accomplish the considerable lifting and carrying involved for the full range of medium work. A maximum of 50 pounds may be lifted at a time, with frequent lifting or carrying of objects weighing up to 25 pounds ....
 
 
 26
 20 C.F.R. Sec. 404.1567(c) (emphasis added). Dambacher asserts that the ALJ erred when he failed to give sufficient consideration to the opinions of Dr. Allen concerning his work capabilities. In determining whether there was substantial evidence for the ALJ's decision, "we must evaluate all of the evidence, including medical evidence, [the plaintiff's] claims, and the evidence of [his] daily activities, as well as the ALJ's observations of the [plaintiff himself], and determine if there is substantial evidence overall supporting the ALJ's decision." Pope v. Shalala, 998 F.2d 473, 486 (7th Cir. 1993).
 
 
 27
 In his opinion, the ALJ considered, inter alia, the opinions of Dr. Allen, the opinions of Dambacher's other treating physicians, and the plaintiff's own testimony as to his daily activities. In his opinion the ALJ stated: "The claimant's treating physicians are in agreement that the claimant would be unable to perform his prior heavy work and should look for lighter type occupations. Medium work is lighter work than the very heavy lifting (up to 200 pounds) required by the claimant's past job ...." The ALJ clearly considered the opinions of plaintiff's treating physicians, together with plaintiff's own testimony, in reaching his decision.
 
 
 28
 "While the law requires an ALJ to weigh all the credible evidence and make unbiased factual findings, it does not compel an ALJ to accept wholly the claimant's perception of a disability." Cass v. Shalala, 8 F.3d 552, 555 (7th Cir. 1993). This credibility determination is exactly what happened in plaintiff's case. We find that the ALJ's determination that plaintiff can perform a limited range of medium work is supported by substantial evidence. The record reveals that although plaintiff suffers from an impairment and a limitation in his ability to perform certain strenuous tasks, this does not, however, translate into a total disability, or an inability to work at all.
 
 
 29
 This circuit has recognized that the "ALJ must minimally articulate his reasons for crediting or rejecting evidence of disability." Scivally, 966 F.2d at 1076, citing Steward, 858 F.2d at 1299. Clearly, in this case, the ALJ gave more than a minimal articulation of his reasons for denying plaintiff's disability claims. Scivally, 966 F.2d at 1076. In light of the record as a whole, we find that the ALJ did not err in determining plaintiff's RFC to include medium level work.
 
 
 30
 The plaintiff asserts that the ALJ erred because he failed to give more credit to the opinions of Dr. Allen in determining plaintiff's level of disability and ability to perform any work at all. The record is clear, however, that the ALJ did take into consideration the opinion of Dr. Allen. It is not required that an ALJ give more creditability to the opinion of one expert over another. The ALJ based his decision on the evidence before him, and articulated the reasons why. "Whether a claimant is disabled is a legal, not a medical, question-an ultimate conclusion for the hearing officer to make." Dray v. Railroad Retirement Bd., 10 F.3d 1306, 1313 (7th Cir. 1993).
 
 D. The Vocational Hypothetical
 
 31
 Finally, plaintiff asserts that the ALJ erred when he found that plaintiff could perform a significant number of jobs which exist in the national economy, even though plaintiff's limitations were such that he was not able to perform his past relevant work. The ALJ, relying on a vocational expert, James Ragains, posed the following hypothetical: "A hypothetical claimant is 58, education is GED. Past work is indicated. Full range of medium. Occasional climbing. Avoid concentrated exposure to heights, unprotected hazardous machinery. And occasional right lifting overhead." Ragains testified that there were several jobs available in Illinois and specifically in Central Illinois which were available to someone with plaintiff's limitations. Ragains was subject to cross-examination by plaintiff concerning issues of picking up things, bending over and carrying more than 25 pounds.
 
 
 32
 We find that the hypothetical posed by the ALJ properly reflected his findings and properly reflected the record. The hypothetical need only reflect the restrictions and limitations as supported by the record. Ehrhart v. Secretary of Health and Human Servs., 969 F.2d 534 (7th Cir. 1992). This Court recently reaffirmed this holding in Ragsdale v. Shalala, 53 F.3d 816 (7th Cir. 1995). As the Ragsdale opinion noted, plaintiff had the opportunity to "question the vocational expert on cross-examination, pose his own hypothetical questions, or request the ALJ to pose interrogatories to the vocational expert, in each case challenging the vocational expert to explain and expand upon the basis of his response to the ALJ's hypothetical question." Id. at 819. Plaintiff, given this opportunity, cannot on appeal simply claim that the hypothetical was insufficient. Any perceived insufficiencies are best addressed on cross-examination, not on appeal. Here, plaintiff's failure to protect his own interests cannot be the basis for overturning the ALJ's findings, especially in light of the fact that the record reveals that Ragains was present throughout the hearing, and that plaintiff, represented by counsel, had the full opportunity to cross-examine the expert on anything which he considered critical and was not included in the hypothetical.
 
 
 33
 Accordingly, we reject plaintiff's objections to the ALJ's hypothetical.
 
 CONCLUSION
 
 34
 The Court finds the remainder of plaintiff's claims of error to be without merit, and that discussion of these claims is not warranted. For all of the above stated reasons, the judgment of the district court is
 
 
 35
 AFFIRMED.
 
 
 
 *
 The Honorable William D. Stiehl of the United States District Court for the Southern District of Illinois, sitting by designation
 
 
 [1]
 Before his injury, Dambacher was employed as a laborer in a sawmill from November 1976 through April 1991. After the accident, he worked from time to time as a janitor at the same sawmill