134 F.3d 375
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Oray R. WINTER, Plaintiff-Appellant,
v.
John J. Callahan, Acting Commissioner of Social Security,
Defendant-Appellee
 No. 97-2567.
 United States Court of Appeals, Seventh Circuit.
 Jan. 22, 1998.
 
 1
 Aaron E. Goodstein, Magistrate Judge.
 
 
 2
 Before Hon. Richard D. Cudahy, Circuit Judge, Hon Joel M. Flaum, Circuit Judge, Hon. Daniel A. Manion, Circuit Judge
 
 ORDER
 GOODSTEIN
 
 3
 Oray Winter appeals from a final decision of the Social Security Administration, denying him disability insurance benefits under the Social Security Act. Winter asserts that the Administrative Law Judge who denied his claim failed to give proper weight to the opinion of an examining psychologist, and failed to consider the quality of the activities Winter engages in. Because substantial evidence supports the conclusion of the ALJ, we affirm.
 
 I.
 
 4
 At the time of his administrative hearing, Winter was a fifty-five year old male who had made his living by installing heating and frost insulation. Winter sustained a significant head trauma in a bicycle accident on August 16.1992. He then suffered a seizure eight months after the accident, on May 27, 1993 He claimed that the seizure impaired his mental faculties and motor control which diminished his short-term and long-term memory and his cognitive abilities. He also claimed that his personality became more abrasive, that he suffered frequent headaches, and that he became easily frustrated. The combination of these symptoms, he contends, have left him disabled.
 
 
 5
 On September 17, 1993, Winter filed a claim for disability insurance benefits with the Social Security Administration, alleging that he had been disabled since his seizure. The Commissioner[1] initially denied Winter's claim, prompting Winter to request an evidentiary hearing before an Administrative Law Judge (ALJ). Both Winter and the Commissioner agreed, and the ALJ found, that Winter had established his inability to perform his past work according to step four of the five-step analysis as set forth in 20 C.F.R. §§ 404.1520(e) and 416.920(e) ("Your impairment(s) must prevent you from doing past relevant work.").
 
 
 6
 At that point the Commissioner bore the burden of proving that Winter was not totally disabled because he could still perform other work in the national economy. Ragsdale v. Shalala, 53 F.3d 816, 817 (7th Cir.1995).[2] The ALJ received evidence that Winter is able to cook, clean, do light household chores, shop, do yard work, and drive. Winter also lives alone, and dresses and grooms himself. For activities, Winter plays cards, watches television, fishes and hunts, skis and attends family dinners at holidays. He also has maintained a relationship with his girlfriend of 22 years. The Commissioner argued to the ALJ that Winter's ability to engage in these activities proves that he is not disabled.
 
 
 7
 Winter now downplays these activities as being only occasional and with help or supervision. He also presented evidence from Dr. Stephen M. Rao, Ph.D., a psychologist who examined Winter. On October 6.1994, Dr Rao conducted a battery of psychological examinations on Winter, and interviewed Winter and his brother Larry. Dr. Rao found that Winter's attention was moderately impaired, that his I.Q. scores were 5-25 points below his scores before the accident; that he exhibited right-sided motor coordination problems; and that he underwent a dramatic change in his personality. Dr. Rao concluded that Winter was disabled.
 
 
 8
 The ALJ reviewed Dr. Rao's medical report, but gave it "little weight." The ALJ credited Winter's own account of his activities over the conclusion of Dr. Rao, and found that Winter remained capable of performing unskilled, medium work not involving heights or substantial contact with coworkers or supervisors. The ALJ denied Winter's application for benefits, and the Appeals Council denied Winter's request for review, making the ALJ's decision the Commissioner's final decision, and the one we review on appeal. Eads v. Secretary of Dept. of Health & Human Servs., 983 F.2d 815, 816-17 (7th Cir.1993).
 
 
 9
 Winter sought judicial review of the Commissioner's decision in the district court. By consent of the parties, the matter was referred to Magistrate Judge Aaron Goodstein. Winter primarily complained that the ALJ discounted the conclusions of Dr. Rao. This, Winter argued, amounted to the ALJ substituting her own medical opinion for that of Dr. Rao, which, in turn, meant that substantial evidence did not support the decision of the ALJ. Cross-motions for summary judgment were filed by Winter and the Commissioner on this point. The district court denied Winter's motion and granted summary judgment in favor of the Commissioner. As the basis for its decision, Judge Goodstein observed that the ALJ relied on the testimony of Winter and his brother Larry as to Winter's functional abilities, and also Winter's functional abilities as reported by Dr. Rao. Judge Goodstein noted that the ALJ was in as good a position to analyze this evidence as Dr. Rao, and thus the reported range of activities constituted substantial evidence supporting the ALJ's finding of no disability and denial of benefits. Winter appeals from that decision.
 
 II.
 
 10
 Our review of the district court's grant of summary judgment is de novo, but the decision of the ALJ shall be affirmed if it is supported by substantial evidence. Adventist Living Centers, Inc., v. Bowen, 881 F.2d 1417, 1420 (7th Cir1989). 42 U.S.C. § 405(g). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. Binion v. Chater, 108 F.3d 780, 782 (7th Cir1997). Further. we will not reweigh the evidence presented to the ALJ. Id. Where conflicting evidence would permit reasonable minds to differ as to whether a claimant is disabled, the Commissioner (or ALJ) must make that determination. Walker v. Bowen, 834 F.2d 635, 643-44 (7th Cir1987).
 
 
 11
 Winter contends on appeal that the ALJ impermissibly substituted her view of the medical evidence in the record for that of Dr Rao. Winter's examining psychologist, and failed to consider the quality of the activities Winter engages in. See Rohan v. Chater, 98 F.3d 966, 970 (7th Cir.1996) ("[A]s this Court has counseled on many occasions, ALJs must not succumb to the temptation to play doctor and make their own independent medical findings"). It is undisputable that the ALJ declined to adopt the final opinion of Dr. Rao, but Dr. Rao's opinion was not the only medical evidence in the record. On December 9, 1992, approximately three months after completing his rehabilitation, Winter was reexamined by a physician. He was found to be asymptomatic and no restrictions were placed on his activities. After the seizure, in July 1993, Dr. Brian A. Chapman, M.D., Winter's treating neurologist, cleared Winter to return to work, with the restrictions that he could not drive or work at heights. On August 18, 1993, Winter was treated by Dr. George Morris, M.D., another neurologist. Dr. Morris concluded that Winter could return to work, but could not operate heavy machinery or work at heights until Winter was free from seizures for at least a couple of years. By April 29, 1994, Dr. Morris indicated that Winter has no physical impairments limiting his ability to work. Thus, neither of the treating neurologists found that Winter was unable to work, in contrast to the opinion of Dr. Rao, an examining psychologist. The Social Security regulations note that the opinions of examining physicians may be given less weight than those who have treated the patient over a long period of time. 20 C.F.R. § 404.1527(d)
 
 
 12
 Additionally, the ALJ's opinion does not suggest that she reinterpreted Dr. Rao's test results. Rather, the ALJ reviewed how Winter functions in society, based on reports by Winter and his brother Larry. Dr. Rao and the ALJ are on equally sound footing to interpret the significance of this information Reynolds v. Bowen, 844 F.2d 451, 454 (7th Cir.1988) (when report of activities conflicts with medical opinion, ALJ may credit report of activities). In October 1992, after the accident but before the seizure, Winter returned to his employment of 31 years installing heat and frost insulation, and worked there until the seizure occurred on May 27, 1993 The installation of heat and frost insulation requires a combination of physical and cognitive abilities, and there is no evidence in the record to suggest that Winter did not actually perform these job functions until his seizure. Winter's account of his own activities also suggests that he was not disabled. Even after his seizure many of the activities which are necessary to maintain employment Winter already does regularly. For example, he grooms himself and maintains his hygiene, he drives, shops, cooks and does household chores, and he maintains his own house and financial affairs. Other activities Winter engages in involve a greater degree of competency. He hunts and fishes, downhill skis, and has maintained a 22-year relationship with his girlfriend. The evidence that Winter actually worked for a substantial period after his accident, and currently engages in a wide assortment of activities, some of them vigorous, supports the conclusion of the ALJ. In light of the opinions by Winter's treating neurologists and Winter's own report of his activities, we are convinced that substantial evidence in the record supports the decision of the ALJ.
 
 
 13
 Winter further contends that while the ALJ considered the quantity and variety of activities Winter engages in, she did not evaluate the quality of these activities. In other words, the ALJ failed to consider the "overall degree of restriction or combination of restrictions" created by Winter's condition. 20 C.F.R § 404, appendix 1, at p. 441. We disagree. The ALJ noted that Winter had difficulty getting along with his neighbors, Mr. and Mrs. Steven and Barbara Spoke. While Winter contends that this evidence was disregarded, the conclusion of the ALJ proves otherwise. She specifically found that Winter needed employment in which contact with coworkers and supervisors would be limited. This finding suggests that the ALJ considered the evidence regarding Winter's personality change, accorded it some weight, and accounted for it in her ruling. Similarly, Winter contends that the ALJ impermissibly found that Winter "only seldomly" suffers from deficiencies in concentration, persistence or pace. This argument mischaracterizes the holding of the ALJ. She found that Winter suffers from an organic mental impairment, but that the impairment resulted in only minimal functional limitations. The ALJ recognized these limitations when she determined that Winter could only perform unskilled labor involving simple, repetitive tasks. Again, the ALJ reviewed the evidence, accorded it weight, and entered a finding which accounted for that evidence. We see no error in the ALJ's consideration of the evidence.
 
 III.
 
 14
 There is no question that Winter has suffered a significant injury, and that his abilities are not what they were before the accident and seizure. However, to be disabled for social security purposes, Winter must be unable to perform other work in the national economy. The ALJ found that he could, and substantial evidence supports this decision. Therefore, the decision of the district court is AFFIRMED.
 
 
 
 [1]
 Effective March 31, 1995, the duties formerly performed by the Secretary of the Department of Health and Human Services, Donna E Shalala, were transferred to the Commissioner of Social Security, Shirley R. Chater, pursuant to the Social Security Independence and Program Improvements Act of 1994, P.L. No. 103-296, 108 Star 1464 On February 28, 1997, Commissioner Chater's term ended, and she was succeeded by Acting Commissioner John J. Callahan. For everyone's convenience, we shall refer to them collectively as the Commissioner throughout this opinion
 
 
 [2]
 Without Social Security's requirement that the claimant be unable to work in the national economy, there would be no market rationale for private long term disability insurance. Private disability insurance generally insures employees against a long term disability which prevents the employee from returning to his or her prior employment, even if he or she could perform other work. Alan Balsam & Albert P. Zabin, Disability Handbook § 17.04 (1992 & Supp.1997). Winter received a disability pension from his union, which terminated in May, 1995