**Duane E. WILKINS, Plaintiff–Appellant,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security, Defendant–Appellee.**

No. 02–4302.

United States Court of Appeals, Seventh Circuit.

Argued April 22, 2003.

Decided June 20, 2003.

Before COFFEY, RIPPLE, and EVANS, Circuit Judges.

ORDER

Duane Wilkins appeals the district court's judgment upholding the denial of

his application for disability insurance benefits and supplemental security income. Twice previously Mr. Wilkins was denied benefits by an administrative law judge, but both times the Social Security Administration's Appeals Council remanded for further proceedings. After a third hearing an ALJ once again denied benefits, this time reasoning that Mr. Wilkins' physical and mental impairments did not preclude him from working. That decision became the final decision of the Commissioner of Social Security when the Appeals Council refused further review. The district court concluded that the ALJ's decision was supported by substantial evidence and that the ALJ had properly analyzed Mr. Wilkins' claim of disability. For the reasons set forth in the following order, we affirm the judgment of the district court.

## I

## BACKGROUND

Mr. Wilkins' pursuit of benefits has now spanned nearly a decade. In July 1993, he submitted his application, alleging an onset of disability in November 1992. In his application Mr. Wilkins alleged that arthritis, a nervous condition, hypertension, depression, and headaches prevented him from returning to his previous work, which included jobs as a janitor, food server, and groundskeeper. After the first of the three hearings was conducted in April 1996, the ALJ addressed four prongs of the familiar five-step analysis. See 20 C.F.R. §§ 404.1520, 416.920. The ALJ concluded that Mr. Wilkins had not worked since November 1992; that his painful bulging disc constituted a severe impairment but his mild depression did not; that he did not have a listed impairment or combination of impairments; and that he could work a significant number of unskilled, light-work jobs in the regional economy. The ALJ did not answer wheth-

er Mr. Wilkins could perform his past relevant work, normally the fourth step in the analysis. The ALJ noted that Mr. Wilkins' history of substance abuse was not relevant to the disability determination. The ALJ also concluded that Mr. Wilkins' depressive disorder only "slightly affect[ed] his ability to engage in activities of daily living, to function socially, or to complete simple tasks." R. at 331.

Mr. Wilkins sought review by the Appeals Council, and because the ALJ had not determined at Step 4 whether he could perform his past relevant work, the Appeals Council granted Mr. Wilkins' request. In addition to evaluating Mr. Wilkins' ability to perform past relevant work, the Appeals Council also directed the ALJ to evaluate the severity of his orthopedic conditions and mental impairments, to reassess his subjective complaints of pain, to articulate reasons for the assessment of his residual functional capacity ("RFC"), and to solicit vocational evidence regarding the impact of the mental impairments on his RFC. Prior to the second hearing, Mr. Wilkins submitted additional evidence, including details about his work history and medical reports related to his headaches, musculoskeletal pain, mental impairments, and newly alleged gastrointestinal problems.

After the July 1997 rehearing before a different ALJ, the new ALJ generally concurred with her predecessor's findings but also addressed a host of new ailments. The ALJ noted that Mr. Wilkins now suffered also from severe hypertension and degenerating disc disease of the cervical spine. Mr. Wilkins had alleged too that he suffered from carpal tunnel syndrome and abdominal problems, but the ALJ determined that his carpal tunnel syndrome had been resolved and that his complaints of abdominal problems lacked "objective support" and would "not significantly interfere

with" his ability to work. R. at 420. At the rehearing Mr. Wilkins had further claimed to suffer from chest pain, fatigue, and "pain throughout his body" (including his lower back, neck, legs, feet, right ankle, and right shoulder), but the ALJ likewise determined that these allegations had "little support in the objective evidence." R. at 420–21. In evaluating Mr. Wilkins' mental impairments, the ALJ concluded that his complaints of depression were supported by the record but that he was "able to care for his personal needs and go out of the house when he chooses" and had demonstrated the capacity "to interact appropriately with others." R. at 424. Specifically addressing Mr. Wilkins' allegation that his depression was caused by his pain, the ALJ remarked that the medical evidence "strongly suggested that he was magnifying his symptoms in order to obtain benefits." R. at 423–24. The ALJ concluded that Mr. Wilkins could perform some of his past relevant work (the jobs that did not involve heavy work) along with numerous other medium- or light-work jobs involving routine and repetitive activities, with the only limitation being that he should not work at unprotected heights.

Mr. Wilkins again sought review by the Appeals Council, and he submitted additional medical reports while his application for review was pending. Included in these documents were reports indicating that he had been diagnosed with chronic pain syndrome and schizoaffective disorder and that he suffered from auditory hallucinations and depression. Also included was a form completed for litigation purposes by a physician at the veteran's hospital who evaluated Mr. Wilkins' ability to return to work. The evaluation is based on a January 1999 visit but references prior visits spaced every three to six months. Mr. Wilkins asserted that he did not submit this evaluation earlier because regulations previously had prevented physicians at a veteran's hospital from completing such assessments. The evaluation includes no diagnosis of Mr. Wilkins' mental impairments but nonetheless concludes without explanation that he cannot return to work because basic work activities and interactions would cause his psychosis to increase. In May 1999, the Appeals Council again remanded to allow the ALJ to evaluate these new medical reports.

A third hearing was then conducted in October 1999 by the same ALJ who conducted the second. In a January 2000 decision, the ALJ again determined that Mr. Wilkins was not disabled. Although acknowledging that he suffered from schizoaffective disorder, the ALJ once again concluded that he did not have an impairment or combination of impairments listed in the agency's regulations (Step 3) and was capable of performing his past work as a kitchen helper or janitor (Step 4). After consulting with a vocational expert, the ALJ further concluded that Mr. Wilkins could work a significant number of light-duty jobs, such as laundry folder or machine packager, readily available in the regional economy (Step 5). The ALJ reasoned that "the claimant's mental impairments have only manifested a moderate restriction of activities of daily living and moderate difficulties in maintaining social functioning," and that his "anxiety related symptoms [had] not resulted in complete inability to function independently outside the area of his home." R. at 15. The ALJ specifically evaluated the January 1999 report but determined that the authoring physician's statements were not credible "in that they were contradictory and unsupported by objective clinical findings." R. at 18. The ALJ also concluded that Mr. Wilkins' testimony was "generally inconsistent and not credible" because the degree of pain he alleged was incongruous

with medical evidence and the treatment he received. R. at 19. Mr. Wilkins requested yet another review, but the Appeals Council declined, making the ALJ's January 2000 decision final.

## II

## DISCUSSION

On appeal, Mr. Wilkins argues generally that when the ALJ determined his RFC she did not take into account his mental impairments. Mr. Wilkins' argument appears to center on the idea that, if the ALJ had properly analyzed the evidence he presented, she would have concluded that there were no jobs he would be capable of performing, and thus she must have ignored the record evidence supporting his position. *See Clifford v. Apfel,* 227 F.3d 863, 871 (7th Cir.2000) (ALJ must consider "all relevant evidence," not just evidence supporting her conclusion). In particular, he contends that the ALJ "failed to consider" either the January 1999 medical report, his Global Assessment Functioning ("GAF") score, or his subjective complaints about his mental impairments. Appellant's Br. at 9–16. Mr. Wilkins also contends that the ALJ failed to sufficiently develop the record and presented an improper hypothetical to the vocational expert. Mr. Wilkins further argues that the ALJ failed to comply with the directives in the Appeals Council's several remands, but this allegation, even if true, is not relevant to our review of the ALJ's decision. Our task is simply to decide whether the ALJ applied the correct legal standards and reached a decision that is supported by substantial evidence. 42 U.S.C. § 405(g); *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir.2002). Evidence is substantial if a reasonable mind could accept it as adequate to support a conclusion. *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir.2002). When reviewing the findings, we do not reweigh the evidence or substitute our judgment for that of the ALJ. *Id.*

With respect to his RFC, Mr. Wilkins first argues that the ALJ arrived at it without considering the January 1999 physician's evaluation. But as the Commissioner points out, the ALJ spent nearly an entire page of her opinion discussing this document. She reviewed all of the physician's conclusions but found that his statements were not credible. She noted that "apparently [the] claimant's statements were accepted without any attempt to determine their accuracy and consistency with daily activities, etc." R. at 18. Although a treating physician's opinion is generally entitled to controlling weight, an ALJ can discredit that opinion if it is not supported by medical findings and is inconsistent with other evidence in the record. *Dixon v. Massanari,* 270 F.3d 1171, 1177 (7th Cir.2001). The ALJ discusses numerous other documents in the record that contradict the physician's January 1999 evaluation. She references physician's reports from October 1997 and February 1998 documenting Mr. Wilkins' statements that "mentally he was doing 'fairly good' " and that he was "doing fairly well mentally," respectively. R. at 17. According to those records he was oriented and showed appropriate affect, judgment, and insight. The ALJ also noted that according to a July 1999 evaluation, Mr. Wilkins reported that recently he had fewer 'rages,' felt less depressed, and experienced fewer auditory hallucinations. Mr. Wilkins questions the ALJ's statement that "presumably [Mr. Wilkins] would have been hospitalized at the VA if [the physician's January 1999 evaluation] accurately reflected his functioning," R. at 18, but the Social Security regulations specifically instruct an ALJ to consider the treatment a claimant has received for his symptoms, *see* Social Security Ruling 96–7p, 1996 WL

374186, at *7 (claimant's statements "may be less credible if the level or frequency of treatment is inconsistent with the level of complaints"). The ALJ thus properly determined that the January 1999 evaluation was inconsistent with other record evidence. *See Dixon,* 270 F.3d at 1177–78 (treating physician's opinion properly discredited where ALJ explained that record evidence contradicted physician's opinion).

█ Mr. Wilkins has an even weaker argument that in determining his RFC the ALJ ignored his GAF score of 40, which was reported in the record of the July 1999 evaluation. He asserts that a GAF score of 40 "is inconsistent with," Appellant's Br. at 10, the ALJ's conclusion that he is capable of working and "establishes by competent medical evidence and authority that he is more limited than that reported in the ALJ's decision," id. at 15. The GAF scale measures a "clinician's judgment of the individual's overall level of functioning." Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision 32 (2000). A GAF score of 40 applies to an individual with "[s]ome impairment in reality testing or communication ... OR major impairment in several areas." *Id.* at 34 (emphasis in original). But the GAF scale is intended to be used to make treatment decisions, *id.* at 32, and nowhere do the Social Security regulations or case law require an ALJ to determine the extent of an individual's disability based entirely on his GAF score, *see Howard v. Commissioner of Social Security,* 276 F.3d 235, 241 (6th Cir.2002) (GAF score may assist ALJ in formulating claimant's RFC but is not essential).

█ We are likewise unpersuaded by Mr. Wilkins' sketchy argument that his subjective complaints about the impact of his mental impairments undermine the ALJ's assessment of his RFC. The ALJ

concluded that "relevant credibility factors fail[ed] to support a finding of disability" because his testimony was inconsistent. R. at 19. In response, Mr. Wilkins argues only that "his subjective complaints are supported by the objective evidence." Appellant's Br. at 13. We generally will not overturn an ALJ's credibility finding unless it is "patently wrong." *Zurawski v. Halter,* 245 F.3d 881, 887 (7th Cir.2001). Social Security Ruling 96–7p requires an ALJ to articulate the reasons behind a credibility determination, and those reasons must be "grounded in evidence and articulated in the determination or decision." 1996 WL 374186, at *4 (S.S.A. July 2, 1996). *See Brindisi ex rel. Brindisi v. Barnhart,* 315 F.3d 783, 787 (7th Cir.2003). Here the ALJ pointed out that Mr. Wilkins was "taking many medications yet does not report receiving any relief from any of these." R. at 19. She also noted that he "testified that he lives with his parents yet was unable to remember if his sister lives with his parents or not." *Id.* Finally, the ALJ observed that he "reported many symptoms of pain affecting various joints of his body" but "did not allege any restrictions on activities of daily living." *Id.* Thus, the ALJ properly identified specific reasons supported by record evidence for her credibility determination, so her decision was not patently wrong. *See Donahue v. Barnhart,* 279 F.3d 441, 444 (7th Cir.2002) (credibility determination upheld where ALJ provided specific reasons based on record evidence). And given her conclusion that Mr. Wilkins' testimony was not credible, the ALJ did not need to consider it in determining his RFC. *See Nelson v. Apfel,* 131 F.3d 1228, 1237 (7th Cir.1997) ("The ALJ should consider and discuss all medical evidence that is credible, supported by clinical findings, and relevant to the question at hand.").

■ Because the ALJ properly analyzed the record evidence when she discounted the January 1999 physician's evaluation, Mr. Wilkins' GAF score, and his subjective complaints, we reject Mr. Wilkins' contention that when the ALJ determined his RFC she "substituted [her] judgment for that of the doctors." Appellant's Br. at 14. *See Dixon,* 270 F.3d at 1177 ("the cases in which we have reversed because an ALJ impermissibly played doctor are ones in which the ALJ failed to address relevant evidence"). The ALJ properly articulated her analysis of the evidence and built an accurate and logical bridge from the record evidence to her conclusion that Mr. Wilkins' mental impairments did not preclude him from working. *See id.* at 1176. She determined that the only limitations proven by objective medical evidence were that Mr. Wilkins experienced "concentration problems" and "difficulty getting along with others." R. at 19. The ALJ thus limited Mr. Wilkins' RFC to medium work (due to his physical impairments) that was "routine and repetitive in nature . . . without constant interaction with others." *Id.*

■ Having found no merit to Mr. Wilkins' specific complaints about the determination of his RFC, we turn to his two remaining arguments. First, Mr. Wilkins generally contends that the ALJ did not fulfill her duty to develop the record fully because at the third hearing she did not ask Mr. Wilkins any questions about his mental impairments. Although an ALJ has the duty to develop a full and fair record, *Smith v. Apfel,* 231 F.3d 433, 437 (7th Cir.2000), an ALJ is "entitled to assume" that an applicant represented by an attorney is making his "strongest case for benefits," *Glenn v. Secretary of Health and Human Services,* 814 F.2d 387, 391 (7th Cir.1987).

■ Mr. Wilkins also argues that the ALJ erred by presenting the vocational expert with a hypothetical that did not account for all of his mental impairments. The hypothetical an ALJ provides to a vocational expert is appropriate as long as it includes the limitations "supported by medical evidence in the record." *Steele,* 290 F.3d at 942. Mr. Wilkins argues that the ALJ erred by not including in her hypothetical the assessments from the January 1999 physician's evaluation, but we view this contention as simply a disguised attempt to revive his earlier assertion that the ALJ should have deferred to this evaluation. As we have indicated already, the ALJ appropriately concluded that the evaluation was not supported by medical evidence and lacked credibility, so she did not need to include the physician's assessments in her hypothetical. *See Sims,* 309 F.3d at 432 (no error where ALJ told vocational expert to consider only those impairments that were supported by evidence in the record).

The hypothetical would have been improper only if the ALJ had not accounted for the limitations she did find to be supported by the record—that Mr. Wilkins has "concentration problems" and "difficulty getting along with others." *R. at 19. See Steele,* 290 F.3d at 942 (hypothetical question must include all limitations). The ALJ's limitation to jobs "without constant interaction with others" allows for Mr. Wilkins' difficulty getting along with other people. R. at 19. And while the limitation to a job that is "routine and repetitive," *id.,* might not appear to fully consider Mr. Wilkins' difficulty concentrating on a specific job for an extended period of time, a vocational expert's testimony is supported by substantial evidence as long as the vocational expert "learned of the limitations . . . and presumably accounted for them," *Steele,* 290 F.3d at 942. Because the vocational expert was present at the hearing,

he was aware that the ALJ had concluded that Mr. Wilkins had difficulty concentrating and as a result could succeed only at routine and repetitive jobs. Accordingly, substantial evidence supports the conclusion that the vocational expert accounted for that limitation when he listed the jobs Mr. Wilkins could perform. *See id.* (no error if vocational expert learned of the limitations during the hearing); *see also Ragsdale v. Shalala,* 53 F.3d 816, 820 (7th Cir.1995) (same result where vocational expert learned of the limitations through review of claimant's record prior to the hearing); *Herron v. Shalala,* 19 F.3d 329, 337 (7th Cir.1994) (same); *Ehrhart v. Sec. of HHS,* 969 F.2d 534, 540 (7th Cir.1992) (same).

■ Even if the vocational expert did not properly account for Mr. Wilkins' mental limitations, Mr. Wilkins has waived any argument that the hypothetical question was inappropriate. At the hearing Mr. Wilkins cross-examined the vocational expert about how his problems with grip strength would impact his RFC, but he never questioned the expert's assumption that a limitation to a routine and repetitive job properly accounted for his concentration problems. *See Ragsdale,* 53 F.3d at 819 (a claimant who cross-examines the vocational expert should raise any issues he believes were not properly included in the hypothetical). And at no point has he raised the issue before this court. *See Williams v. REP Corp.,* 302 F.3d 660, 667 (7th Cir.2002) (arguments not raised on appeal are waived).

* We have amended the caption to reflect that the proper respondent is the warden of the prison where Wilson is confined. *See Hogan v. Hanks,* 97 F.3d 189, 190 (7th Cir.1996); Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts.

### Conclusion

For the foregoing reasons, we affirm the judgment of the district court upholding the ALJ's determination that Mr. Wilkins is not disabled.

AFFIRMED