**Wallace E. EHRHART, Plaintiff–Appellant,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant–Appellee.**

**No. 91–3561.**

United States Court of Appeals, Seventh Circuit.

Argued July 7, 1992.

Decided Aug. 3, 1992.

Kenneth F. Laritz, argued, Warren, Mich., Gerald Benjamin, Southfield, Mich., for plaintiff-appellant.

Deborah M. Leonard, Office of the U.S. Atty., Fort Wayne, Ind., Robert C. Stephens, argued, Denise McDuffie Martin, Department of Health and Human Services, Region V, Office of the Gen. Counsel, Chicago, Ill., for defendant-appellee.

Before CUDAHY, COFFEY, and EASTERBROOK, Circuit Judges.

COFFEY, Circuit Judge.

Wallace Ehrhart appeals from a decision of the Secretary of Health and Human Services (Secretary) denying his application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.* The Appeals Council denied Ehrhart's request for review. Adopting the magistrate judge's recommendation, the district court affirmed the decision of the Administrative Law Judge (ALJ) and granted summary judgment for the Secretary. Ehrhart argues on appeal that the Secretary's decision is not supported by substantial evidence. He also challenges the ALJ's consideration of evidence provided by vocational experts. We affirm.

### ·I.

Ehrhart was fifty-three years old at the time of his 1989 hearing. He has a high school education and worked for Fisher Body from October 1956 through December 1983. As a production control clerk, he wrote production schedules, took inventories, and checked production. At the hearing, Ehrhart testified that he received medical retirement beginning in December 1983 as a result of his depression and loss of memory.

Since that date Ehrhart has not engaged in substantial gainful activity. A heart condition and depression, he maintains, prevent him from returning to work. He filed for disability insurance benefits in August 1988 after the denial of two previous applications in 1984. He has had two angioplasties[1] as well as triple heart bypass surgery, which was performed in August 1988. Degenerative arthritis of the spine afflicts Ehrhart as well. He testified that he has suffered from depression, anxiety, and nervousness. Against his physician's orders, he has discontinued medication to control his depression and heart condition. He is able to sit for two hours, stand for two hours, and lift twenty to thirty pounds. While he is able to walk two or three miles a day at a slow gait, exertion results in chest pains.

The ALJ posed a hypothetical question to Dr. L. Fisher, a vocational expert, at the hearing. He asked whether Ehrhart could perform any skilled or semi-skilled, light jobs given his age, education, work experience, and ability to perform only low-stress, light work that does not involve extremes of temperature, crowds, repetitive pushing, pulling, climbing, or complex instructions. Dr. Fisher replied that Ehrhart could work as a general office clerk or undertake a sedentary job such as a time-keeper, payroll, or production clerk. In the region, 3,883 light jobs were available, according to Dr. Fisher, in addition to 710 of the sedentary variety.

Although the medical evidence established that Ehrhart has severe coronary artery disease as well as a personality disorder, the ALJ ruled that Ehrhart's ailments, individually or in combination, do not meet or equal any impairment contained in the Listing of Impairments. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1 (1991). The ALJ found Ehrhart's subjective complaints to be credible, but determined that he maintained the residual functional capacity to perform the full range of sedentary and light work, with certain limitations. Taking into account Ehrhart's age, education, past work experience, and residual functional capacity for light work, the ALJ consulted the Medical–Vocational Guidelines (grids) and rules, which suggested that Ehrhart did not have a disability as defined by the Act. *See* Part 404, Subpart P, Appendix 2, Table Nos. 1 and 2, Rules 201.15, 202.15. Then, after considering the

---

1. A procedure to enlarge a narrowed coronary artery through the introduction of a balloon-tipped catheter into the artery. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY (hereinafter DORLAND'S) 84 (27th ed.1988).

vocational expert's testimony that Ehrhart could perform numerous light jobs, the ALJ found him not disabled.

In a motion for summary judgment, Ehrhart asserted that his disability was based on heart disease, a personality disorder, severe and chronic pain, arthritis, and the combination of these ailments. The district court denied the motion, instead granting the Secretary's cross-motion for summary judgment and affirming the decision of the ALJ. Ehrhart appeals from that decision.

## II.

Ehrhart has raised a plethora of issues on appeal.[2] In addition to four arguments he enumerates in his "Statement of Issues", he embarks on a discussion of several others in the body of his brief.[3] One such issue has been preserved on appeal. The Secretary cites three other unlisted issues and argues that all are waived. We agree.[4] So too has Ehrhart waived one of the four specifically listed arguments.[5]

What survives for our review, then, are three issues: First, whether substantial evidence supports the Secretary's decision, in particular with regard to Ehrhart's nonexertional impairments. Second, whether the ALJ posed a proper hypothetical question to the vocational expert at the hearing.[6]

**2.** We repeat the caveat that it behooves litigants to choose with care a few select issues for review, preferably those not forfeited by waiver. *See generally* section XVIII of the Practitioner's Handbook for Appeals to the United States Court of Appeals for the Seventh Circuit. "[T]he shotgun inclusion of issues may be the basis of hitting the target with something but still runs the risk of obscuring the significant issues by dilution." *United States v. Levy*, 741 F.2d 915, 924 (7th Cir.), *cert. denied*, 469 U.S. 1021, 105 S.Ct. 440, 83 L.Ed.2d 366 (1984).

**3.** The failure of Ehrhart's attorney to conform to the conventions of appellate brief writing needlessly required the court to waste valuable time locating and deciphering pertinent arguments. For any future appearances he makes before this court, we urge that he follow the guidelines set forth in Fed.R.App.P. 28(a)(4), and in particular section XVIII(i) of the Practitioner's Handbook for Appeals to the United States Court of Appeals for the Seventh Circuit, which details how an argument should be organized: "It should be suitably broken up into the main points with appropriate headings and contain the reasons in support of one's position...." *Id.* A simple division of the argument section into individually captioned subsections corresponding to the issues described in the "Statement of Issues" would have been of great assistance and might have helped rein the brief in from its meandering course.

**4.** Issues that a claimant fails to raise before the district court are waived on appeal. *Reynolds v. Bowen*, 844 F.2d 451, 453 (7th Cir.1988); *Lockert v. Faulkner*, 843 F.2d 1015, 1017 (7th Cir. 1988); *Cheshier v. Bowen*, 831 F.2d 687, 689 (7th Cir.1987).

**5.** The issue whether the Secretary "properly evaluate[d] the treating physician's medical opinion", Appellant's Brief, filed Dec. 13, 1991, at 2, drops out because it is a no-show in the body of the brief. *E.g., Matter of Sullivan*, 680 F.2d 1131, 1132 n. 1 (7th Cir.), *cert. denied*, 459 U.S. 992, 103 S.Ct. 349, 74 L.Ed.2d 388 (1982); *Cannon v. Teamsters & Chauffeurs Union, Local 627*, 657 F.2d 173, 177–178 (7th Cir.1981); *Chicago and Western Indiana Railroad Company v. Motorship Buko Maru*, 505 F.2d 579, 581 (7th Cir.1974); *see* Fed.R.App.P. 28(a)(4). It is not even clear from the phrasing of this issue which single "treating physician" Ehrhart is referring to, or whether he means several of them.

Nevertheless, in search of some development or even mention of this issue, we scrutinized the ten-page argument segment—located, curiously, in the section captioned "Conclusion." But to no avail. Contesting the sufficiency of weight accorded to a treating physician's reports in the context of all the evidence available to the ALJ is a distinct argument previous claimants have advanced in this court. *See, e.g., Stephens v. Heckler*, 766 F.2d 284 (7th Cir.1985); *Garrison v. Heckler*, 765 F.2d 710 (7th Cir.1985). In this instance, the argument appears to be a throwaway. *Cf. Hanrahan v. Thieret*, 933 F.2d 1328, 1335 n. 13 (7th Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 446, 116 L.Ed.2d 464 (1991) (Court need not devote its time to discussion of argument raised, if at all, "in a very opaque manner.").

Once again we observe that compelling the court to take up a burdensome and fruitless scavenger hunt for arguments is a drain on its time and resources. "Judges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (per curiam).

**6.** We recognize that different lawyers have represented Ehrhart in the district court and in the court of appeals. Still, the issues an attorney may wish to raise on appeal are necessarily circumscribed by the arguments his predecessor made before the district court. A change in counsel does not give a party license to craft novel legal arguments that either were embryonic or completely overlooked in earlier proceedings.

Third, whether the ALJ improperly weighed the testimony of the vocational expert who appeared at the hearing.

## A. Relevant Standards

The standard of review in disability cases limits this court as well as the district court to determining whether the· final decision of the Secretary is both supported by substantial evidence and based on the proper legal criteria. *Young v. Secretary of Health and Human Services*, 957 F.2d 386, 388 (7th Cir.1992); *Prince v. Sullivan*, 933 F.2d 598, 601 (7th Cir.1991); *Burnett v. Bowen*, 830 F.2d 731, 734 (7th Cir.1987); 42 U.S.C. § 405(g). Substantial evidence means " 'more than a mere scintilla' " of proof, instead requiring " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (citation omitted); *Anderson v. Bowen*, 868 F.2d 921, 923 (7th Cir.1989). In our reviewing capacity, however, we may not reweigh the evidence or decide whether a claimant is disabled. *Stuckey v. Sullivan*, 881 F.2d 506, 508 (7th Cir.1989). Nor may the court substitute its own judgment for that of the Secretary. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir.1986). By the same token, we must do more than merely rubber stamp the decisions of the Secretary. *Veal v. Bowen*, 833 F.2d 693, 696 (7th Cir.1987).

The Act ·entitles applicants to disability insurance benefits if they are under age 65, disabled, and insured. 42 U.S.C. § 423(a). In determining that Ehrhart is not disabled, the Secretary employed the familiar five-step analysis. *See, e.g., Bowen v. Yuckert*, 482 U.S. 137, 140–142, 107 S.Ct.

2287, 2291, 96 L.Ed.2d 119 (1987); *Stuckey v. Sullivan*, 881 F.2d 506, 508 (7th Cir. 1989); 20 C.F.R. §§ 404.1520, 416.920 (1991). This appeal focuses on the fourth and fifth steps of the five-part inquiry. At the fourth level, the Secretary must determine whether the claimant is able to perform his past work. If yes, the Secretary concludes that there is no disability. §§ 404.1520(e), 416.920(e). If the claimant cannot perform his past job, the Secretary considers whether the claimant is suited for other positions in the national economy, taking into account his residual functional capacity, age, education, and work experience. If he is unable to perform other work, he will be deemed disabled. If other appropriate work opportunities exist, the Secretary will not find the claimant disabled. §§ 404.1520(f), 416.920(f).

## B. Substantial Evidence

Ehrhart broadly objects to the decision of the ALJ. But his decision to forego prescribed medications that might improve his health by itself could justify the ALJ's conclusion. The Secretary may not find total disability when a claimant inexcusably refuses to follow a prescribed course of medical treatment that would eliminate his total disability. § 416.930(b); *DeFrancesco v.· Bowen*, 867 F.2d 1040, 1043 (7th Cir. 1989) (citing *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir.1988)); *Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 231 (6th Cir.1990); *cf. Lucas v. Sullivan*, 918 F.2d 1567, 1574 (11th Cir. 1990). Ehrhart told the ALJ that besides taking aspirin, he had discontinued prescribed medications for his heart condition and depression. Certified Transcript of

Nothing approaching an argument about the ALJ's hypothetical question to the vocational expert—Ehrhart's fourth listed issue—emerges either in the brief for summary judgment or in objections to the magistrate judge's report and recommendation. In reviewing issues presented in earlier proceedings, this court is not required to engage in a semiotic reading of arguments that bear only the vaguest resemblance to the issues raised on appeal. Nor may we entertain appeals from a decision of the Secretary that a party fails to raise in the district court. *Young v. Secretary of Health and Human Servic-*

*es*, 957 F.2d 386, 389 n. 2 (7th Cir.1992); *Cheshier*, 831 F.2d at 689. Appearing for the very first time in Ehrhart's appellate brief, the hypothetical question issue would have been waived if the government had so argued. But the government did not object, so it has waived waiver. *Mason v. Ashland Exploration, Inc.*, 965 F.2d 1421, 1425 (7th Cir.1992); *Fagan v. Washington*, 942 F.2d 1155, 1157 (7th Cir.1991); *Thomas v. Indiana*, 910 F.2d 1413, 1415–1416 (7th Cir. 1990). We therefore discuss the merits of this issue.

Administrative Record (hereinafter Tr.) 45, filed June 10, 1992. Objective medical evidence reviewed by the ALJ indicated, however, that these medicines were providing relief and controlling his impairments.

■■ Despite this uncontested fact, Ehrhart makes a sweeping claim disputing the substantiality of evidence underlying the ALJ's decision. In particular, he takes exception to the ALJ's determination that while he is not disabled, his "subjective complaints are well supported by the medical evidence of record, making his testimony credible." Tr. 17. This finding—described by Ehrhart as "somewhat disturbing and confusing", Appellant's Brief, filed Dec. 13, 1991, at 21—hardly qualifies as the paradox he believes it to be. Ehrhart's testimony about his ailments and impairments were not of the objective sort, but rather were subjective complaints supported by the medical evidence in the record. But even objective medical evidence of a claimant's pain, which the ALJ must consider, does not mandate a finding of disability. *Meredith v. Bowen*, 833 F.2d 650, 654 (7th Cir.1987). There is nothing anomalous, then, about an ALJ finding a claimant's testimony to be generally credible yet still determining that the claimant is not physically or mentally limited in the manner he claims to be. *Cf. Imani v. Heckler*, 797 F.2d 508, 511–512 (7th Cir. 1986).

■ The ALJ found that although severe coronary artery disease and a personality disorder prevent Ehrhart from performing his past work, he is not disabled or incapable of a full range of light or sedentary work. On the basis of objective medical evidence submitted at the hearing, the ALJ concluded that Ehrhart's heart condition failed to meet or equal an impairment listed in § 404, Subpart P, Appendix 1. Several medical reports support this finding. For instance, a medical report dated November 30, 1988 indicated that rest, nitroglycerin,[7] and Cardizem relieve Ehrhart's sporadic angina. Tr. 14,288. An examination on

January 27, 1989 revealed that the use of Cardizem alleviates the shortness of breath Ehrhart experiences during his daily two-to-three mile walk. The examination also showed that his heart has a normal S1 and S2 without murmurs, clicks, rubs, S3 or S4. Tr. 318. Another examination mentioned that Ehrhart has been experiencing moderate amounts of stiffness in his knees as a result of degenerative joint disease, but not any chest pain. Tr. 316. In sum, the record provides substantial evidence supporting the ALJ's determination that Ehrhart's cardiac disorders are not disabling.

■ In addition, the ALJ found that Ehrhart's mental impairment did not meet or equal a "disabling personality disorder" described in § 404, Subpart P, Appendix 1, listing 12.08. Psychological assessments indicated that Ehrhart gets along well with others and that medication tempers his depression. Tr. 214, 286. One report stated that "when push comes to shove this man is psychologically capable of many gainful activities." Tr. 237. Moreover, the record documents that he drives, goes for walks, goes fishing, watches television, and is involved in a bowling league. Tr. 53, 202. At the hearing Ehrhart testified that he goes out to dinner and socializes with his family. Tr. 51, 202, 287. A psychological examination demonstrated that Ehrhart is cooperative, appropriate, oriented, and not affected by delusions or hallucinations. Tr. 286. His speech was deemed both relevant and consistent, his immediate memory appeared to be intact, and his judgment and insight were considered adequate. The examination report concluded that Ehrhart functions within the average range of ability with no major disruptions. *Id.* Substantial evidence therefore supports the ALJ's conclusion that Ehrhart's personality disorder was not disabling.

## C. Vocational Experts

■ Ehrhart raises two challenges to the manner in which the ALJ interpreted evidence provided by the vocational experts.

---

**7.** A medicine used chiefly in the prophylaxis and treatment of angina pectoris. DORLAND'S 1139 (27th ed. 1988).

At the outset, we observe that a vocational expert is not a required or even essential part of a disability benefits hearing. The decision whether to employ the services of a vocational expert is entirely within the discretion of the ALJ. § 404.1566(e). While the specialized knowledge of a vocational expert might prove helpful in certain cases, *Orzel v. Finch*, 445 F.2d 150, 154 (7th Cir.1971), "we only require that there be reliable evidence of some kind that would persuade a reasonable person that the limitations in question do not significantly diminish the employment opportunities otherwise available." *Warmoth v. Bowen*, 798 F.2d 1109, 1112 (7th Cir.1986) (citations omitted). The record before us suggests that the ALJ reached his conclusion by considering the evidence and consulting the grids. Although the vocational expert testimony provided specific information on the number of available jobs suitable for Ehrhart, it served mostly to reinforce the ALJ's finding of no disability. Be that as it may, Ehrhart attacks the use of the vocational expert testimony on two separate grounds, which we consider in turn.

### 1. Hypothetical Question

■ Ehrhart first alleges that the ALJ posed an improper and incomplete hypothetical question to Dr. Fisher, the vocational expert who testified at the hearing. In particular, Ehrhart contends that the ALJ did not incorporate all of his nonexertional impairments into the hypothetical question, including information contained in four psychiatric reports attesting to his "inability to concentrate, memory loss, confusion, ability to perform activities within a schedule and maintain regular attendance; ability to complete a normal work day and work week without interruptions from psychologically based symptoms; moderately limited ability to interact appropriately with the general public or to set realistic goals." Appellant's Brief, at 21.

In his hypothetical question to Dr. Fisher, the ALJ inquired whether Ehrhart could perform any skilled or semi-skilled light jobs, considering the limitations of his age, education, work experience, and ability to perform only low stress, light work that would not expose him to extremes of temperature, crowds, repetitive pushing, pulling, climbing, or many complex instructions. Tr. 61–62, 64. The vocational expert testified that Ehrhart's nonexertional limitations did not significantly compromise his ability to perform in a full range of sedentary and light work functions. He elaborated that Ehrhart is capable of working as a general office clerk, a bank teller, a timekeeping clerk, or a payroll clerk. Numerous jobs in these fields exist in the region where Ehrhart lives, according to Dr. Fisher's testimony. Tr. 16–18, findings 11–12; *See also* §§ 404.1567–1569; Part 404, Subpart P, Appendix 2, Table Nos. 1 and 2, Rules 201.15, 202.15.

The hypothetical question posed by the ALJ was proper because it reflected Ehrhart's impairments to the extent that the ALJ found them supported by evidence in the record. "All that is required is that the hypothetical question be supported by the medical evidence in the record." *Meredith*, 833 F.2d at 654. Moreover, even if the hypothetical question omitted any medical evidence that accurately reflected Ehrhart's impairments, the vocational expert indicated that he had reviewed the documentary evidence prior to the hearing. Tr. 60. When the record supports the conclusion that the vocational expert considered the medical reports and documents, his responses are probative of both residual functional capacity and which jobs a claimant reasonably can perform, even if the hypothetical question itself does not take into account every aspect of the claimant's impairments. *Meredith*, 833 F.2d at 654; *Waite v. Bowen*, 819 F.2d 1356, 1361 (7th Cir.1987).

Nothing in the record indicates that Dr. Fisher was unable to understand the medical reports, unfamiliar with them, or remiss in considering all of the information at his disposal. Nor did the ALJ neglect to include in his question relevant evidence of Ehrhart's impairments. Substantial evidence supported the hypothetical question, which contemplated Ehrhart's heart condition as well as limitations precluding him from doing more than light work, working

in temperature extremes, or performing repetitive or enervating motions. Furthermore, the question considered Ehrhart's mental impairments and their related effects on his memory and ability to carry out stressful jobs requiring complex directions. In short, the ALJ considered Ehrhart's mental impairments in his hypothetical question. The responses of the vocational expert therefore provided a reliable assessment of Ehrhart's residual functional capacity and which jobs would be appropriate for him.

### 2. Weight of Vocational Expert Testimony

■ Ehrhart argues as well that the ALJ accorded much more weight to the testimony of Dr. Fisher than to John Holland, a vocational expert based in New York who did not testify at the hearing. Appellant's Brief, at 18. Specifically, Ehrhart argues that the ALJ omitted from consideration limitations described by Holland, including his depression, difficulty concentrating, recurrent irritability, and vulnerability to stress. As discussed above, however, the ALJ considered these limitations but determined from the medical evidence that they were not disabling. In addition, Ehrhart argues that the ALJ did not acknowledge Holland's conclusion that he possessed insufficient transferable skills to engage in substantial gainful activity. Dr. Fisher, in contrast, testified that Ehrhart has in fact retained skills that qualify him for a number of positions available in the local economy.

In essence, Ehrhart suggests that the ALJ erred by failing to adopt the conclusions of Holland. This argument is unconvincing. The ALJ considered Holland's analysis, but based his decision on objective evidence indicating that Ehrhart had transferable work skills, Tr. 62–63, could engage in a variety of activities, Tr. 66, and was psychologically fit to partake in many gainful enterprises. Tr. 237. If it is the case that he gave greater weight to Dr. Fisher's testimony, the ALJ was well within his right to do so. "He observed the witnesses directly, and those intangible, unarticulable elements that constitute 'credibility' unfor-

tunately leave no trace that can be discerned in this or any other transcript we must review." *Imani,* 797 F.2d at 512. Furthermore, resolution of evidentiary conflicts lies within the exclusive domain of the ALJ, including the reconciliation of contradictory vocational expert testimony. *Herr v. Sullivan,* 912 F.2d 178, 181 (7th Cir.1990) (citing *Walker v. Bowen,* 834 F.2d 635, 640 (7th Cir.1987) and *Reynolds v. Bowen,* 844 F.2d 451, 454 (7th Cir.1988)). Holland based his report on medical information current through September 1984, Tr. 422—evidence that bears only limited relevance to Ehrhart's present application for benefits. Understandably, then, the ALJ indicated in his decision that he "gives greater weight to the vocational expert who testified at the hearing than the vocational analysis submitted which was based on unknown evidence, perhaps that just more favorable to the claimant." Tr. 16. *Cf. DeFrancesco,* 867 F.2d at 1043.

### III.

Despite the difficulties Ehrhart endures as a result of his condition, the decision of the Secretary is supported by substantial evidence. Accordingly, the district court's order upholding the Secretary's denial of benefits is

AFFIRMED.