**Ronald A. CONNOR, Plaintiff,**

v.

**Donna E. SHALALA, Secretary of Health and Human Services, Defendant.**

No. 94 C 6272.

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 26, 1995.

---

Emmanuel F. Guyon, Streator, IL, for plaintiff Ronald A. Connor.

Ramune Rita Kelecius, United States Attorney's Office, Chicago, IL, for defendant Department of Health and Human Services, Social Security Administration.

### MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

Pursuant to 42 U.S.C. § 405(g), Ronald A. Connor ("Connor") appeals the final decision of the Department of Health and Human Services Secretary Donna Shalala ("Secretary") denying Connor's claim for Social Security Disability Benefits under the Social Security Act, 42 U.S.C. §§ 416(i), 423. Both parties move for summary judgment under Federal Rule of Civil Procedure 56.

### BACKGROUND

Connor is a 48 year old man who alleges that he is disabled and cannot work because he suffers from uncontrolled diabetes mellitus, depression, and asthma. Record ("R.") at 9. He claims that he has been disabled as of September 29, 1991. R. at 9. Prior to that time, he had worked as a mechanical repairman at Anchor Glass in Streator, Illinois for a continuous period of twenty-six years. R. at 11.

Connor has a documented history of diabetes mellitus. He has been admitted to the

hospital because of his diabetes and other illnesses in February 1989, R. at 165, December 1989, R. at 175, August 1990, R. at 137, December 1990, R. at 142, January 1991, R. at 143, October 1991, R. at 146, and April 1993, R. at 235. In addition, he has made occasional emergency room visits, R. at 149, 175, 177, 181, 182, 188, 189, 194, and received regular treatment from Dr. James Scott and his successor, Dr. Permathan Vadhanasindhu ("Dr. Vad"). R. at 30–31. His diabetes has manifested itself in the symptoms of "dizziness, fainting spells, cellulitis in the legs, and weakness in the legs attributed to peripheral neuropathy." R. at 11.

Connor applied to the Social Security Administration for disability benefits on July 13, 1992. R. at 68. On September 28, 1992, Connor received a denial notice from the Administration which stated that he was not entitled to benefits. R. at 74. He requested reconsideration of his application, R. at 78, and was informed on December 16, 1992, that the reviewers had also denied his claim. R. at 81. Connor requested an administrative hearing, R. at 84, which was held by Administrative Law Judge (ALJ) Barbara Welsch on July 19, 1993. R. at 26. The ALJ issued a written opinion after the hearing stating that Connor was not disabled. R. at 9–15. The Appeals Council denied Connor's request for review, consequently adopting the ALJ's opinion as the final statement of the Secretary. *See* 20 C.F.R. § 404.981; *Jones v. Shalala,* 10 F.3d 522, 523 (7th Cir.1993). Next, Connor brought this action. Both Connor and the Secretary have moved for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the following reasons, the opinion of the ALJ is REVERSED and this case is REMANDED for further proceedings below. In reaching this decision, the Court has reviewed the pertinent evidence and testimony contained in the record.

### REVIEW OF THE RECORD

#### Connor's Testimony

At the administrative hearing, Connor testified that he stopped working at Anchor Glass in February, 1991, because he could not control his diabetes. R. at 36. This illness caused him to get light-headed and dizzy, and sometimes he would pass out. *Id.* He claims that during the last four years he was working, he passed out twelve to sixteen times. R. at 54. The department head and union president at his job suggested that he should not keep working because he could injure himself or his coworkers if he continued to pass out. R. at 50. Although Connor, at the time of the hearing, had not recently passed out, he claimed that he usually passes out about once or twice a week because his blood sugar is either too high or too low. R. at 39.

In addition, Connor testified that his legs ache and his feet are numb as a result of poor circulation. R. at 41. He claims that, because of this condition, he can only walk for ten to fifteen minutes before his feet hurt so badly that he has to sit down. *Id.* He can only sit for ten to twenty minutes before his legs start to go to sleep again. *Id.* Also, a couple of times a day he has a sharp pain "going through the end of [his] toe." R. at 51–52.

In response to the ALJ's questions, Connor stated that he does more housework now than he did when he was working. R. at 46. He does the dishes once in a while when he is feeling well, and occasionally does the laundry, *id.,* and fixes his own meals. R. at 45. He takes thirty minute bicycle rides three times a week, and lifts weights about four times a month. R. at 42.

Although Connor claims to completely understand the diet and medication regimen that he needs to follow because of his diabetes, he admitted at the hearing that he had only been checking his blood sugar once a day, instead of twice a day as he is supposed to. R. at 40. He explained that he deviates from his treatment regimen in this manner because the necessary equipment costs too much. *Id.* He takes insulin both in the mornings and evenings. R. at 38. He also takes Xanax about three times a week to help him sleep, and occasionally takes aspirin. *Id.*

In addition to suffering from diabetes, Connor has asthma. R. at 43. He admitted, however, that his asthma has not been both-

ering him that much in the past few years. R. at 44. Connor also denied having any mental problems, noting that a psychologist told him that "the only problem [he has] is saying no to people." *Id.*

### Evelyn Connor's Testimony

Evelyn Connor verified her husband's statements with regard to his situation at home. R. at 54–55. In addition, she testified that Connor gets terrible headaches, and in the mornings he has "rubber band legs" and is off balance a lot. R. at 55.

### Connor's Medical Record

1. *State Agency Physician's Report*

Dr. James Graham examined the record for the Agency's initial determination of Connor's disability status. Dr. Graham concluded on the basis of Connor's diabetes and peripheral neuropathy that Connor could occasionally lift up to fifty pounds and frequently lift twenty-five pounds. R. at 121. He also concluded that Connor could stand or walk for about six hours in an eight hour work day, and could sit for the same period of time. *Id.* Connor's ability to push and/or pull was found to be unlimited. *Id.* Graham also determined that Connor should avoid concentrated exposure to extreme cold and should avoid heights. R. at 124. On the basis of his review, Graham concluded that Connor should be able to do medium work for the usual hours in a day. R. at 126. Graham's conclusions were affirmed by Dr. Elsie Villafor, who reviewed the record for Connor's reconsideration request. *Id.*

2. *Dr. Scott's Reports*

Dr. Scott's reports confirm that Connor suffers from diabetes mellitus. Dr. Scott also noted that Connor seemed to be suffering from mild anxiety and depression on two separate occasions in November, 1990. R. at 140, 186. In addition, Dr. Scott doubted whether Connor was correctly following his diet. R. at 274.

3. *Dr. Vadhanasindhu's Reports*

On July 29, 1992, Dr. Vad completed a diabetic report for the Bureau of Disability Determination Services. R. at 150. Dr. Vad reported that Connor had diabetes mellitus which was poorly controlled at times, and that it was difficult for Connor to sit or stand for more than four hours at a time. *Id.*

On December 7, 1993, Dr. Vad completed another report, at Connor's request, to aid in the ALJ's adjudication of this case. R. at 291. In this brief report, he concluded that Connor could stand or walk for four hours out of an eight hour work day, needing a break after two hours, and that he could sit for the same amount of time, subject to the same limitation. *Id.* Connor could also work for four hours a day, two hours at a time, at a job with an option of a sitting or standing position. *Id.*

### Vocational Expert's Testimony

Vocational Expert ("VE") Dennis Gustafson testified at the hearing that Connor's old job would be qualified as skilled, medium to heavy work. R. at 33–34. The ALJ then asked the VE to "assume an individual who is 45, 46 years old, with an eighth grade education, with past relevant work the same as Mr. Connor, with an exertional capacity limited to a full range of medium work with the following exceptions: no unprotected heights or unprotected machinery, must avoid concentrated exposures to cold." R. at 34. The VE concluded that this hypothetical person could not perform Connor's past relevant work, but that there were unskilled, entry level jobs in the relevant region at the medium, light, or sedentary levels such an individual could perform. R. 34–35

After the hearing, the ALJ submitted a second hypothetical to the VE in the form of an interrogatory. R. at 297. The ALJ asked the VE to "[a]ssume that, in addition to the [previous hypothetical's] nonexertional limits above, the hypothetical individual can stand and walk for only 4 hours in an 8–hour day and can work in a sitting position for the remaining 4 hours. Assume further that while standing or walking this individual can lift up to 10 pounds frequently and 20 pounds occasionally." *Id.* The VE responded that this hypothetical person could perform work with a maximum physical demand level of light. *Id.* More specifically, he said that this person would be suited for a Sedentary Hand Assembler position. *Id.* There are

approximately 7,300 suitable Sedentary Hand Assembler jobs in Illinois, with about twenty percent of these jobs found in the central Illinois area. R. at 298.

**The ALJ's Decision**

On March 29, 1995, ALJ Barbara Welsch issued a written opinion denying Connor's disability claims. The ALJ concluded that "the evidence ... establishes that the claimant has a 'severe impairment,'" but found that this impairment was not equivalent to the criteria of any of the impairments listed in the regulations at 20 C.F.R. part 404, subpart P, appendix 1. R. at 10. Consequently, the ALJ moved to the next step in the analysis for disability, determining whether Connor had the residual functional capacity ("RFC") to perform any past relevant work. *Id.* To make this determination, the ALJ reviewed the medical evidence in the record. *Id.*

The ALJ concluded that the record did not support Connor's claim that he suffered from depression. R. at 11. She pointed to the fact that Connor denied current mental problems at the hearing, and that there was no suggestion of depression in the record pertaining to the time in which Connor was claiming disability. *Id.* The ALJ also found that Connor was not impaired by his asthma, noting that Connor himself said that his asthma was not bothering him. *Id.*

With respect to Connor's diabetes, however, the ALJ determined that "the medical evidence supports significant functional limitations." R. at 12. However, not all of the evidence in the record was consistent with respect to the extent that Connor's diabetes limited his ability to work. The restrictions reported by Dr. Vad varied notably from those restrictions claimed by Connor at the hearing. *Id.* In her evaluation of this evidence, the ALJ found that "[t]he conclusions of Dr. Vad carry significant weight in view of his status as a treating physician and the frequent treatment rendered by him to the claimant." *Id.* She also determined that Connor's testimony seemed "exaggerated, and motivated by his desire to obtain benefits." *Id.*

Although the ALJ found Dr. Vad's conclusions to be more credible that Connor's, she noted that Dr. Vad's conclusions were not entirely consistent throughout the record. *Id.* The ALJ believed that "the interpretation of Dr. Vad's report that is most logical and most consistent with the medical evidence and the claimant's daily activities is that he can work for eight hours a day with a sit/stand option." *Id.*

The ALJ concluded that Connor's RFC was consistent with that required for sedentary work, except that Connor could not work in a sitting position for more than four hours a day. R. at 13. Since the VE reported that there were a substantial number of jobs in the regional economy which Connor could perform, the ALJ entered a finding of not disabled. R. at 15.

**Statutory and Regulatory Framework**

According to the Social Security Act, a person is eligible for disability benefits if he or she: is insured for disability benefits, has not attained retirement age, has filed an application for disability insurance benefits, and is under a disability. 42 U.S.C. § 423(a)(1). "Disability" is defined as the "inability to engage is any substantial gainful activity by reason of any medically determinable physical or mental impairment which · can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months...." 42 U.S.C. § 423(d)(1)(A); *see also Lee v. Sullivan,* 988 F.2d 789, 792 (7th Cir.1993). A claimant is under a disability "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy ... in significant numbers in the region where such individual lives or in several regions in the country." 42 U.S.C. § 423(d)(2)(A).

The Social Security Regulations outline a five-step inquiry to be followed when determining whether a claimant is disabled: (1) is the claimant presently unemployed; (2) is the claimant's impairment or combination of impairments severe; (3) does the impairment meet or exceed any of the list of specific

impairments that the Secretary acknowledges to be so severe as to preclude substantial gainful activity; (4) if the impairment has not been listed by the Secretary as conclusively disabling, is the claimant unable to perform his former occupation; and (5) if the claimant cannot perform the past occupation, is the claimant unable to perform other work in the national economy in light of his age, education and work experience. *Pope v. Shalala,* 998 F.2d 473, 477 (7th Cir.1993).

■ "A negative conclusion at any step (except for step three) precludes a finding of disability. An affirmative answer at steps one, two or four leads to the next step. An affirmative answer at steps three or five results in a finding of disability." *Shields v. Sullivan,* 801 F.Supp. 151, 155 (N.D.Ill.1992). Upon reaching the fifth step, the rules in the Medical Vocational Guidelines of Regulation part 404, subpart P, appendix 2 (the "Grid") must be considered. *Id.* The Grid rules incorporate an analysis of the vocational factors of age, education, and work experience in combination with the claimant's RFC-defined in Social Security Ruling 83–10 as a "medical assessment of what a person can do in a work setting despite functional limitations and environmental restrictions imposed by his or her medically determinable impairment(s)." "RFC is expressed in terms of a claimant's maximum sustained work capability for either 'sedentary,' 'light,' 'medium,' 'heavy,' or 'very heavy' work as those terms are defined by Reg. § 404.1567." *Shields,* 801 F.Supp. at 155. In determining if work is available for the claimant in the national economy, the ALJ may use a VE, 20 C.F.R. § 404.1566(e), and if there is work available, then a finding of not disabled must result. 20 C.F.R. §§ 404.1520(f)(1), 404.1566(b).

**Standard of Review**

Section 405(g) of the Social Security Act provides that a district court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The statute further provides that "[t]he findings of the Secretary as to any fact, if sup-ported by substantial evidence, shall be conclusive...." *Id.* Substantial evidence means "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Luna v. Shalala,* 22 F.3d 687, 689 (7th Cir.1994) (quoting *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)). Thus, a reviewing court will not "reevaluate the facts, reweigh the evidence or substitute [its] own judgment for that of the Secretary." *Id.* at 689.

**ANALYSIS**

Connor's objections to the ALJ's findings can be grouped into three main contentions. First, he maintains that the ALJ improperly evaluated the extent of his impairments, which were so severe that they met one of the listing requirements. Second, he contends that his RFC was improperly assessed. Finally, he challenges the ALJ's conclusion that there were other jobs in the relevant region that he could perform.

**Extent of Connor's Impairments**

■ If a claimant has an impairment which meets or is medically equivalent to one of the list of specific impairments found in 20 C.F.R. part 404, subpart P, appendix 1, the Social Security Administration must make a finding of disabled. 20 C.F.R. § 404.1520(d); *Shields,* 801 F.Supp. at 155. The ALJ found that Connor did not have an impairment which met or was equivalent to any of the listings. R. at 14. Connor contends that he meets listing 5.08(B)(4) which provides:

5.08 *Weight loss due to any persisting gastrointestinal disorder:* ... With:

. . . . .

B. Weight equal to or less than the value specified in Table III or IV and one of the following abnormal findings on repeated examinations:

. . . . .

4. Uncontrolled diabetes mellitus due to pancreatic dysfunction with repeated hyperglycemia, hypoglycemia, or ketosis;

. . . .

20 C.F.R. pt. 404, subpt. P, app. 1, § 5.08(B)(4). To prove that he meets this

listed impairment, Connor must show that his impairment "meet[s] *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley,* 493 U.S. 521, 530–31, 110 S.Ct. 885, 891–92, 107 L.Ed.2d 967 (1990).

Connor contends he meets the requirements of listing 5.08(B)(4) because he has uncontrolled diabetes.[1] It is clear that the record conclusively establishes that Connor suffers from diabetes. R. at 14. However, more than suffering from diabetes mellitus is required to meet the stringent standards of this listing. The claimant must meet the specified weight requirement. Connor is 78 inches (6′6″) tall. R. at 33. According to Table III, a man that tall would have to weigh about 151 pounds in order to meet the requirements of any of the impairments listed under 5.08(B).[2] 20 C.F.R. pt. 404, subpt. P, app. 1, § 5.08, tbl. III. At the hearing Connor testified that he weighed 238 pounds, R. at 33, and according to the Plaintiff's reply brief his weight is now at 220 pounds. Pl.'s Reply Br. at 5. This is not sufficient to meet the weight requirement of listing 5.08(B)(4).

■ In an alternative argument, Connor claims that if his diabetes alone is not sufficient to qualify him for benefits, the combination of his diabetes and his depression renders him disabled. He claims that the combined effects of these impairments is "medically equivalent" to the listing. If a claimant suffers from more than one impairment, and none of them alone meet the requirements of a listing, then the Social Security Administration "will review the symptoms, signs, and laboratory findings about [the] impairments to determine whether the combination of [the] impairments is medically equal to any listed impairment." 20 C.F.R. § 404.1526(a).

However, the ALJ concluded that Connor did not have a medically determinable mental impairment. R. at 11. Proof of a mental impairment is established "by medical evidence, consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." 20 C.F.R. § 404.1508. In this case, Connor himself testified that he had not been diagnosed as having any mental problems. R. at 44. The only medical evidence in the record that supports a finding of depression occurs in two reports made by Dr. Scott in November, 1990. R. at 140, 186. After this tentative diagnosis, Connor attended several therapy sessions with a psychologist, but Connor testified that this psychologist did not find anything mentally wrong with him. R. at 44. Connor has not seen a psychiatrist or psychologist since these sessions. *Id.* In addition, a report made on December 3, 1990, by Dr. Scott stated that Connor's "depression appears to be lifting." R. at 142.

In light of the medical records and testimony regarding Connor's depression, this Court finds that the ALJ's conclusion that Connor did not have a mental impairment is supported by sufficient evidence. Consequently, the ALJ was not required to address Connor's argument that the combination of diabetes and depression were medically equivalent to a listed impairment.

**The Assessment of Connor's RFC**

■ Since the ALJ concluded that Connor did not meet a listing requirement and could not perform his past relevant work, R. at 14, she proceeded to perform a residual functional capacity analysis as required by 20 C.F.R. § 404.1545–404.1569. RFC is a measurement of what physical duties a claimant can still perform in a job setting despite the limitations caused by physical and/or mental impairments. 20 C.F.R. § 404.1545(a). In

---

1. In his brief, Connor suggests that the ALJ failed to weigh properly the reports of both of his regular physicians, Dr. Scott and Dr. Vad, which refer to his diabetes as "uncontrolled." *See* Pl.'s Mem.Supp.Summ.J. at 24. However, this contention cannot withstand a mere glance at the ALJ's report, which clearly states that "[t]he conclusions of Dr. Vad carry significant weight in view of his status as a treating physician and the frequent treatment rendered by him to the claimant." R. at 12.

2. Obviously, Connor is a very tall man. Table III only provides weight guidelines for heights up to 76 inches. The Court has tried to extrapolate the approximate weight for Connor's height. Although our determination of 151 pounds may not be exactly correct, we conclude that any error in our extrapolation is harmless to Connor's case, because the error would be at most only a couple of pounds.

addition, the Social Security Administration considers the effects of other limiting factors, such as pain. 20 C.F.R. § 404.1545(e). The relevant medical and nonmedical evidence, including the claimant's own assessment of his abilities, must be considered in an RFC determination. 20 C.F.R. § 404.1545(a); *Diaz v. Chater,* 55 F.3d 300, 306 n. 2 (7th Cir.1995).

The ALJ in this case concluded that Connor had the RFC to perform work which does not require lifting or carrying more than ten pounds occasionally, and standing, walking, or working in a sitting position for more than four hours each a day. R. at 14. The ALJ concluded that these limitations were in accord with the requirement of sedentary work.[3] *Id.* The ALJ also found that Connor had several nonexertional limitations, which made it impossible for him to perform work which required repetitive climbing of stairs, concentrated exposure to extreme cold, or any exposure to hazardous machinery or unprotected heights. *Id.*

■ Connor contends that the ALJ's assessment of his RFC was flawed because she failed to consider the seriousness of his diabetes, and inadequately evaluated the effect of his depression upon his ability to work. As there is sufficient evidence in the record to support the ALJ's conclusion that Connor did not have a mental impairment, the ALJ was not at fault for not considering depression in her assessment. Connor's contentions with respect to his limitations caused solely from his diabetes, however, require a more in depth analysis.

Connor testified at his hearing that he can only walk for ten or fifteen minutes before his feet hurt so badly that he has to sit down. R. at 41. He also said that he can only sit for ten to twenty minutes before his legs start to go numb. *Id.* These limitations are much more severe than the ones reported by Dr. Vad. R. at 150, 291. To reconcile this difference, the ALJ made a credibility determination that Connor's testimony seemed "exaggerated, and motivated by his desire to obtain benefits." R. at 12.

■ "While the law requires an ALJ to make unbiased factual findings, it does not compel an ALJ to accept wholly the claimant's perception of a disability." *Cass v. Shalala,* 8 F.3d 552, 555 (7th Cir.1993). A credibility determination will not be overturned unless it is "patently wrong in view of the cold record before us." *Stuckey v. Sullivan,* 881 F.2d 506, 509 (7th Cir.1989) (citing *Imani v. Heckler,* 797 F.2d 508, 512 (7th Cir.), *cert. denied,* 479 U.S. 988, 107 S.Ct. 580, 93 L.Ed.2d 583 (1986)).

ALJ Welsch reasoned that Dr. Vad's reports "carry significant weight in view of his status as a treating physician and the frequent treatment rendered by him to the claimant." R. at 12. She also found Connor's testimony with respect to his limitations was inconsistent with the extent of daily activities in which he was engaged. *Id.* For instance, Connor rides a bicycle for half an hour three times a week. R. at 42. This is inconsistent with Connor's statement that he can only sit for ten to twenty minutes at a time. Dr. Vad's reports and Connor's daily regimen are substantial evidence to uphold the ALJ's conclusion that Connor was exaggerating the extent of his limitations.

■ Despite the fact that the ALJ concluded that Dr. Vad's reports were more credible that Connor's testimony, his reports were not entirely internally consistent. Specifically, the conclusion that Connor could stand and walk for four hours a day does not align with the conclusion that he could work with an option of sitting or standing for only four hours a day. R. at 12, 291. If evidence is internally inconsistent, the ALJ must weigh it in relation to all of the evidence to determine whether a claimant is disabled. 20 C.F.R. § 404.1527(c)(2). In this case, ALJ Welsch concluded that "the interpretation of Dr. Vad's report that is most logical and most consistent with the medical evidence and the claimant's daily activities is that he can work for eight hours a day with a sit/stand option." R. at 12.

This conclusion is supported by substantial evidence. In Dr. Vad's December 7, 1993,

---

**3.** Sedentary work is defined as work which involves sitting, occasional walking and standing, and minimal lifting. 20 C.F.R. §§ 404.1567(a), 416.968(a); *Diaz,* 55 F.3d at 306.

report, he stated that Connor could stand or walk for four hours in a work day, and sit for four hours a day. R. at 291. If these two statements are combined, it is reasonable to conclude that Connor could work with a sit/stand option for eight hours a day. In addition, Dr. Vad's July 29, 1992, report also stated that Connor could not sit or stand for four hours at a time. R. at 150.

**The Existence of Jobs in the Economy that Connor Could Perform.**

The ALJ concluded that there were a significant number of jobs in the economy that Connor could perform despite his functional limitations. R. at 15. The ALJ used the Grid as a guideline for this decision, and also relied upon the testimony of the VE. R. at 13.

 Connor challenges the adequacy of the ALJ's hypothetical question to the VE on the grounds that it failed to include mention of Connor's diabetes or his depression. The omission of depression from the hypothetical question can be dealt with easily, since we have already concluded that there is substantial evidence in the record which supports the ALJ's conclusion that Connor was not suffering from a mental impairment. In contrast, all the parties involved in this litigation agree that Connor does suffer from diabetes. The omission of diabetes from the hypothetical question, however, is not a fatal flaw.

In the Seventh Circuit, a hypothetical question is not necessarily faulty if it does not include every one of the claimant's impairments. *Ehrhart v. Secretary*, 969 F.2d 534, 540 (7th Cir.1992). As long as the VE has reviewed the record and listened to the hearing testimony, "*Ehrhart* allows the reviewing courts to draw the conclusion that the vocational expert considered [the claimant's] ... various impairments even though all of those impairments were not specifically included in the ALJ's hypothetical question." *Ragsdale v. Shalala*, 53 F.3d 816, 820 (7th

Cir.1995). In *Ragsdale*, the Seventh Circuit explicitly upheld the *Ehrhart* doctrine in the face of a direct challenge to its legitimacy, which alleged that allowing a VE to consider evidence not included in the hypothetical question allowed him to usurp the role of the ALJ and weigh the medical evidence and make credibility determinations.[4] *Id.* at 821.

One of the reasons that the Seventh Circuit affirmed *Ehrhart* was that the current system of application for benefits includes procedural safeguards against this usurpation. *Id.* at 819. One of these safeguards is the cross-examination of the VE by the claimant. *Id.* In this case, Connor's attorney asked the VE to testify generally about the extent that an employer would tolerate an employee being absent from work. R. at 61. The VE responded that in unskilled work the tolerance level would not exceed two absences per month on a consistent basis. *Id.* He proceeded to testify that if a person passed out twelve to sixteen times over four years, as Connor claimed that he had, that person would significantly lower the productivity of his shift and would be precluded from unskilled employment. R. at 62.

 The VE's testimony was essential to the ALJ's finding of not disabled. There was no other evidence in the record to which the ALJ could point to show that there were other jobs in the relevant economy that Connor could perform. Generally, the testimony of a VE is considered substantial enough to support an ALJ's decision. *Cass*, 8 F.3d at 555. In this case, however, the ALJ did not explicitly consider the testimony of the VE that Connor's attorney solicited on cross-examination regarding Connor's potential blackouts and absences from work.

 An ALJ is required to articulate, at some minimum level, the reasons for her decision. *Diaz*, 55 F.3d at 307. "Although the Secretary is not legally required to ex-

---

4. In *Ragsdale*, the Seventh Circuit suggested that in future cases a way to clarify the VE's testimony would be for the ALJ to follow up a hypothetical question with a question asking the VE to explain the basis for his response. *Ragsdale*, 53 F.3d at 821. This explanation would make it clear in the record whether the VE considered medical evidence in the record or hearing testimony which was not included in the ALJ's hypothetical. *Id.* However, since the administrative hearing in Connor's case occurred before the *Ragsdale* opinion was issued, we cannot fault the ALJ in this case for not asking the VE to explain his answers.

plicitly pass judgment on every piece of evidence, this Court believes that the better practice is to briefly address all the evidence militating in favor of a finding of disability and relied upon by the disability applicant since it is almost inevitable that the decision of the Secretary will be appealed to the federal district court." *Cunningham v. Shalala,* 880 F.Supp. 537, 551 n. 15 (N.D.Ill. 1995). Since the VE's testimony in this case was determinative to the ALJ's decision of "not disabled," her failure to address the VE's concessions in cross-examination must be remedied.

## *CONCLUSION*

For the above reasons, all of the determinations made by the ALJ are supported by substantial evidence, except for her determination that there were a significant number of jobs in the relevant economy that Connor could still perform. Consequently, we are compelled to REVERSE the decision of the ALJ and REMAND this case for the consideration of additional evidence pursuant to sentence four of 42 U.S.C. § 405(g). *See Melkonyan v. Sullivan,* 501 U.S. 89, 98, 111 S.Ct. 2157, 2163, 115 L.Ed.2d 78 (1991). Namely, the ALJ should consider whether Connor has established that he will consistently be absent from work for medical reasons more than two times a month, and whether his diabetes is likely to cause him to pass out at work on a regular basis in the future, thereby precluding him from unskilled work. The Court directs the Clerk of the Court to ENTER JUDGMENT in favor of the Plaintiff and against the Defendant. Case TERMINATED.