107 F.3d 873
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Joyce C. FLOWERS, Plaintiff-Appellant,
v.
Shirley S. CHATER, Commissioner of Social Security,
Defendant-Appellee.
 No. 96-2352.
 United States Court of Appeals, Seventh Circuit.
 Submitted Jan. 28, 1997.
Decided Feb. 07, 1997.
 
 1
 Before BAUER, KANNE and EVANS; Circuit Judges.
 
 ORDER
 
 2
 Joyce Flowers applied for Supplemental Security Income (SSI) disability benefits (42 U.S.C. § 1382) in 1988 and 1991, and was denied both times. She filed a third application in May 1993. An Administrative Law Judge (ALJ) determined that Flowers was not eligible for benefits, using the five-step test of 20 C.F.R. § 416.920. The ALJ started by finding that Flowers had not been engaging in substantial gainful activity, and that she had a "severe" impairment as defined in 20 C.F.R. § 416.921. Next, the ALJ determined that Flowers did not meet any of the listings in 20 C.F.R. Pt. 404, Subpt. P, App. I, or their equivalent. The ALJ then found that Flowers retained the residual functional capacity to perform the full range of medium work, except that she could not work at unprotected heights, required routine repetitive instruction, could not climb repetitively, and could not use foot controls. Relying on the testimony of a vocational expert, the ALJ concluded that Flowers could perform a significant number of jobs in the national economy, and thus was not disabled. The Appeals Council denied Flowers's request for review, adopting the ALJ's decision and explaining how it was supported by the record.
 
 
 3
 Flowers then filed a complaint in the district court seeking review of the Commissioner's final decision. 42 U.S.C. § 405(g). The district court denied Flowers's motion for summary judgment and granted the Commissioner's motion to affirm, concluding that the denial of benefits was supported by substantial evidence. Flowers appeals.
 
 
 4
 Flowers's first argument is that substantial evidence does not support the finding that she was capable of performing medium work. The ALJ found "controlling" the statements of Dr. Abuhouli,[1] who examined Flowers in March, June, and September 1993, and was apparently Flowers's treating physician during that time. A.R. 24; Exhs. C-15 and C-17.[2] The ALJ credited Dr. Abuhouli's diagnoses of hypertension, degenerative arthritis of the lumbosacral spine, and what the ALJ characterized as "minor" degenerative changes in the knees.[3] But most important to the ALJ was Dr. Abuhouli's indication that, in the ALJ's words, Flowers "is precluded only from heavy weight lifting." In May 1993, Dr. Abuhouli filled out two forms of the Bureau of Disability Determination Services, one concerning cardiac health, and the other concerning spinal disorders. Both forms explained that "[m]edical information is needed to establish your patient's eligibility under the disability provisions of the Social Security Act. Please refer to the Physician's Handbook 'Disability Evaluation under Social Security' for specific references." The forms requested several pieces of medical information, and ended by asking the doctor to "describe the patient's ability to do work-related activities such as sitting, standing, moving about, lifting, carrying, handling objects, hearing, speaking, traveling." Dr. Abuhouli left the space blank for this final question on the cardiac health form. However, on the spinal health form, Dr. Abuhouli responded to the question by writing, "heavy weight lifting is discouraged/otherwise she can do all the above."
 
 
 5
 According to Flowers, the ALJ improperly gave more weight to the opinion of Dr. Abuhouli, whose specialty is not indicated in the record, than to the opinions of specialists (Dr. Traina and Dr. Russo), who found greater limitations on Flowers's exertional abilities. The regulations do provide that the ALJ shall "generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 416.927(d)(5). However, whether the source is a specialist is only one of several factors that the ALJ must consider when assessing varying medical opinions. See 20 C.F.R. § 416.927(d)(1)-(6); Books v. Chater, 91 F.3d 972, 979 (7th Cir.1996). How to weigh the opinions in a particular case "is a question for the [Commissioner's] delegate, subject only to the rule that the final decision must be supported by 'substantial evidence.' " Stephens v. Heckler, 766 F.2d 284, 289 (7th Cir.1985) (citations omitted); see also Books, 91 F.3d at 979. The ALJ may consider whether the evaluation is close in time to the period for which disability is alleged. See id. (discussing Micus v. Bowen, 979 F.2d 602, 608 (7th Cir.1992)). Dr. Abuhouli evaluated Flowers's condition in 1993, contemporaneously with her application for SSI benefits; by contrast, the reports of Dr. Traina and Dr. Russo date from the period 1988-1991. As the district court explained, "[i]t is completely reasonable for the ALJ to give more credit to a 1993 report generated by a treating physician than a 1988 or 1990 report." Order of April 29, 1996, at 13-14.
 
 
 6
 That the ALJ could credit Dr. Abuhouli's statement, however, does not resolve whether the ALJ could deduce from that statement that Flowers could perform medium work. "Medium work" is defined by the regulations as "involv[ing] lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 416.967(c). The definition of "heavy work" is the same, except that it substitutes "100" for "50" and "50" for "25." 20 C.F.R. § 416.967(d). The problem with Dr. Abuhouli's statement that "heavy weight lifting is discouraged" is not its brevity, but rather that it does not define the term "heavy." The form used by Dr. Abuhouli requested information for purposes of determining "the patient's eligibility under the Social Security Act," and advised the doctor to "refer to the Physician's Handbook 'Disability Evaluation under Social Security' for specific references." It may be reasonable to assume that a doctor so instructed, when filling out the form, would have in mind the definitions of "heavy work" and "medium work" from the regulations. On the other hand, if that assumption is unreasonable, then it seems doubtful that the ALJ could properly decide that the statement "heavy weight lifting is discouraged" implied that Flowers could do "medium work" as defined by 20 C.F.R. § 416.967.
 
 
 7
 Even were we to decide that the ALJ could not use Dr. Abuhouli's statement to find that Flowers was capable of "medium work." Flowers would not earn a remand on that basis. The other evaluations cited by Flowers show that she could lift at least 10 pounds frequently and 20 pounds occasionally: the lifting necessary for "light work" and "sedentary work." 20 C.F.R. § 416.967(a), (b). "Light work" and "sedentary work" do require abilities other than lifting--for example, certain amounts of sitting or standing. Id. This is where Dr. Abuhouli's conclusions come back into play. Dr. Abuhouli's complete statement was: "heavy weight lifting is discouraged/otherwise she can do all the above." He wrote the statement in regard to whether Flowers could do various work-related activities including "sitting, standing, moving about, lifting, carrying, [and] handling objects." The ALJ reasonably interpreted the statement to mean "she is precluded only from heavy weight lifting." Even if "heavy weight lifting" did not mean what the ALJ thought it meant, the activities which Flowers was not precluded from performing--e.g., sitting and standing--do meet the remainder of the "light work" and "sedentary work" definitions. See id. And, because the vocational expert testified to many jobs suiting Flowers not only in the "medium work" category but also in the "light work" and "sedentary work" categories, see infra, a remand with regard to the "medium work" finding would be unnecessary.
 
 
 8
 Flowers's next argument is that the finding that she did not suffer from a mental impairment is not supported by substantial evidence. In her view, the evidence shows that she met Listing 12.08 ("Personality Disorders") in 20 C.F.R. Pt. 404, Subpt. P, App. 1, and specifically the criterion "Oddities of thought, perception, speech and behavior." Listing 12.08(A)(3). Flowers bases this argument mostly on the evaluation by Mr. Mathews (Exh. B-25). This still leaves the evaluations by Dr. Ward and Dr. Jacobs (Exhs. B-28, C-18), the evidence relied upon by the ALJ and Appeals Council as well as by the district court.
 
 
 9
 Flowers does note that Dr. Jacobs diagnosed a "personality disorder." And while Dr. Jacobs's definition of "personality disorder" might differ from the requirements of Listing 12.08, one could argue that his report describes "[o]ddities of thought, perception, speech and behavior." However, such evidence is only the first part of a showing under Listing 12.08. To satisfy the second part of the showing, the "oddities" must have led to three of the following four results: "Marked restriction of activities of daily living"; "Marked difficulties in maintaining social functioning"; "Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere)"; or "Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors)." Listing 12.08(B). Neither the report of Dr. Jacobs nor that of Dr. Ward provide strong evidence in any of these four categories. In any event, Dr. Ward's report does not indicate any particular oddities of the sort in Listing 12.08(A)(3). Thus, there is substantial evidence that Flowers did not meet either the first or the second requirement of the listing.
 
 
 10
 Flowers also contends that she had several marked deficiencies in her ability to perform work-related activities. However, the evidence that Flowers failed to meet Listing 12.08(B) also supports the ALJ's finding that her only work-related mental impairment was a problem with concentration. The ALJ's chart entitled "Functional Limitation and Degree of Limitation" (A.R. 32-33) makes similar findings to those in Dr. Ward's charts (Exh. B-28 at 4-5), namely that most of her mental work-related limitations were slight at best. The findings are bolstered by Flowers's indication to Dr. Jacobs that she was able to do the dishes, cook, clean, and do laundry (Exh. C-18 at 3). The ALJ and Appeals Council could reasonably conclude that Flowers had the mental capability to cope with work involving routine repetitive instruction.
 
 
 11
 Flowers's last argument relates to her prior arguments. She contends that the district court's hypothetical question to the vocational expert (VE) did not reflect the evidence of her physical and mental impairments. Flowers quotes this court's statement that "[t]he hypothetical question posed by the ALJ to the VE must fully set forth the claimant's impairments to the extent that they are supported by the medical evidence in the record." Herron v. Shalala, 19 F.3d 329, 337 (7th Cir.1994) (citing Cass v. Shalala, 8 F.3d 552, 556 (7th Cir.1993), and Ehrhart v. Secretary of Health and Human Services, 969 F.2d 534, 540 (7th Cir.1992)). Standing alone, the quotation from Herron might seem to suggest that as long as there is some evidence of an impairment, the hypothetical question must mention the impairment. Such an interpretation would flip the "substantial evidence" standard on its head; a remand might be required if substantial evidence supported the claimant (as opposed to the ALJ). This cannot be correct, and indeed, the cases cited in Herron do not invite that reading. As this court held in Ehrhart:
 
 
 12
 The hypothetical question posed by the ALJ was proper because it reflected Ehrhart's impairments to the extent that the ALJ found them supported by evidence in the record. 'All that is required is that the hypothetical question be supported by the medical evidence in the record.'
 
 
 13
 Ehrhart, 969 F.2d at 540 (emphasis added) (quoting Meredith v. Bowen, 833 F.2d 650, 654 (7th Cir.1987)); see also Cass, 8 F.3d at 555-56. While the hypothetical question in this case may have lacked the support of substantial evidence in positing the ability to do "medium work," the error (if any) was harmless given that there was substantial evidence of "light work" and "sedentary work," and that the VE testified to many jobs in those categories. As for the rest of the hypothetical, Flowers has failed to show that any other inclusions or omissions from the question were not supported by substantial evidence.[4]
 
 
 14
 The judgment of the district court, which refused to overturn the final decision of the Commissioner of Social Security, is AFFIRMED.
 
 
 
 [1]
 The doctor's last name actually appears to be "Abu Houli." However, because the parties and the adjudicators spell the name as "Abuhouli," we shall do the same
 
 
 [2]
 The Appeals Council concluded that Dr. Abuhouli's reports supported the ALJ's determination
 
 
 [3]
 The Appeals Council further noted Dr. Abuhouli's interpretation of Flowers's X-rays as showing only mild changes, and his indication that Flowers's hypertension was controlled by medication
 
 
 [4]
 The ALJ neglected to include in the hypothetical question her finding that Flowers could not use foot controls. Flowers has not mentioned this omission in her brief, and therefore has forfeited any reliance upon it